**James W. FRANKSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6029.**

Court of Appeals of Alaska.

May 28, 1982.

Mary E. Greene and Geoffry B. Wildridge, Asst. Public Defenders, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

W. H. Hawley, Jr., and Bill Murphree, Asst. Attys. Gen., Fairbanks, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J. and COATS and SINGLETON, JJ.

OPINION

COATS, Judge.

James Frankson was convicted after a jury trial of robbery in the first degree, AS 11.41.500,[1] and theft in the second degree,

---

9.  *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

1.  Robbery is defined in AS 11.41.510 which reads as follows:

AS 11.46.130(a)(1).[2] Frankson was sentenced to concurrent terms of fifteen years on the robbery charge and five years on the theft charge. Frankson appeals his conviction and sentence to this court. We reverse Frankson's conviction, finding that the trial judge erred because of the manner in which he allowed Frankson's prior robbery conviction to be used for impeachment purposes.

On November 11, 1980, James Frankson, age 23, met Oscar Tweiten, age 69, in the Savoy Bar in Fairbanks. Tweiten's account of the incident is as follows: Tweiten remembered meeting a young man in the Savoy Bar and then going with the man to the Mecca Bar where Tweiten cashed a check for $200. Tweiten and the man had several drinks. He remembered that he and the young man then drove to Tweiten's house in a 1974 Dodge Dart, which had been loaned to Tweiten by a friend. Tweiten recalled being at his house with the young man, another young man, and a girl. Tweiten also remembers he was struck on the back of the head and knocked out. When Tweiten regained consciousness he realized that he had been tied up.

Tweiten was found tied up by a neighbor who then contacted the police. Tweiten's money, watch, and the 1974 Dodge Dart were missing. Tweiten was hospitalized for about three days because of his injuries.

Several hours after Tweiten was discovered tied up, Trooper Brad Brown stopped a 1974 Dodge Dart near Healy. The car was driven by James Frankson, and his brother, Joe Frankson, was a passenger in the car. Trooper Brown warned James Frankson of his *Miranda* rights, and subsequently, Frankson told Trooper Brown that he had purchased the Dodge Dart from someone for $7,000. Trooper Brown obtained Oscar Tweiten's watch band from Joe Frankson and Tweiten's watch from James. The next day, at the Fairbanks State Trooper office, James Frankson told Trooper Brown that he had met a white male at the Savoy Bar. Frankson said he went to the man's house and the man made sexual advances toward him. Frankson said he wrestled with the man and while they were wrestling the man hit his head on a chair. He then tied the man up and took some money and car keys from a table in the room and then drove off in the Dodge Dart.

At trial James Frankson elaborated on the second version of events that he had given to Trooper Brown. Frankson indicated that he met Tweiten in the Savoy Bar and Tweiten bought him a drink. Frankson said Tweiten was interested in finding an Eskimo girl with whom he could party. Tweiten cashed a check for $200 in the

*Robbery in the second degree.* (a) A person commits the crime of robbery in the second degree if, in the course of taking or attempting to take property from the immediate presence and control of a person, he uses or threatens the immediate use of force upon any person with intent to
(1) prevent or overcome resistance to his taking the property or his retention of the property after taking; or
(2) compel any person to deliver the property or engage in other conduct which might aid in the taking of the property.
(b) Robbery in the second degree is a class B felony.
The crime of robbery is elevated to the first degree where one of three aggravating factors are present. Frankson was convicted of robbery in the first degree because the jury found that he aggravated the robbery under the provisions of AS 11.41.500(a)(3). AS 11.41.500 reads as follows:
*Robbery in the first degree.* (a) A person commits the crime of robbery in the first degree if he violates § 510 of this chapter

and, in the course of violating that section or in immediate flight thereafter, he or another participant
(1) is armed with a deadly weapon or represents by words or other conduct that he or another participant is so armed;
(2) uses or attempts to use a dangerous instrument or represents by words or other conduct that he or another participant is armed with a dangerous instrument; or
(3) causes or attempts to cause serious physical injury to any person.
(b) Robbery in the first degree is a class A felony.

2. Sec. 11.46.130. *Theft in the second degree.* (a) A person commits the crime of theft in the second degree if he commits theft as defined in § 100 of this chapter and
(1) the value of the property or services is $500 or more but less than $25,000....
(b) Theft in the second degree is a class C felony.

Mecca Bar, and Tweiten then drove Frankson around. According to Frankson, Tweiten asked him if he had any sisters and he replied, "Yes." Tweiten offered to pay $100 if Frankson could get one of his sisters to go for a ride with them. Frankson invited his sister Rosa to join them, and they drove over to Tweiten's house. After they were in the house, Frankson said Tweiten gave him $100 for his sister and gave him additional money to buy beer. Rosa then decided that if Frankson was leaving to get beer she would go with him. Frankson said Tweiten came at him and pulled Frankson toward him, and Frankson said he thought Tweiten might be making a sexual advance. Frankson pushed Tweiten away, and Tweiten fell and hit his head on the corner of the bed. Frankson tied him up and picked up the money, watch, and car keys that were on a table. Frankson then left with Rosa in the Dodge Dart. He dropped Rosa off at his house and picked up his brother Joe and drove toward Healy where he was apprehended by Trooper Brown. Frankson argued that he was not guilty of robbery since he did not use force for the purpose of furthering a robbery, but rather to protect himself from an assault. Frankson also argued that he was not guilty of theft of the car because there was no evidence that he intended to deprive Tweiten of the property as defined in the theft statute.[3]

During Frankson's testimony at trial, the prosecution attacked Frankson's credibility by showing that he had been formerly convicted of the crime of robbery in the State of Washington in 1977. Frankson objected to the use of the prior robbery conviction on a number of grounds at trial, and he now raises those same grounds on appeal.

Evidence Rule 609 controls when a witness can be impeached by evidence that he has formerly been convicted of a crime. That rule reads in part:

*Impeachment by Evidence of Conviction of Crime.*

(a) *General Rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is only admissible if the crime involved dishonesty or false statement.

(b) *Time Limit.* Evidence of a conviction under this rule is inadmissible if a period of more than five years has elapsed since the date of the conviction. The court may, however, allow evidence of the conviction of the witness other than the accused in a criminal case after more than five years have elapsed if the court is satisfied that admission in evidence is necessary for a fair determination of the case.

(c) *Admissibility.* Before a witness may be impeached by evidence of a prior conviction, the court shall be advised of the existence of the conviction and shall rule if the witness may be impeached by proof of the conviction by weighing its probative value against its prejudicial effect.

█ Frankson argues that his conviction should not have been admitted under Evi-

---

**3.** Theft is defined in AS 11.46.100(1) as follows:
A person commits theft if
(1) with intent to deprive another of property or to appropriate property of another to himself or a third person, he obtains the property of another.
The term "deprive" is defined as follows in AS 11.46.990(2):
(2) 'deprive' or 'deprive another of property' means to
(A) withhold property of another or cause property of another to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him;
(B) dispose of the property in such a manner or under such circumstances as to make it unlikely that the owner will recover the property;
(C) retain the property of another with intent to restore it to him only if he pays a reward or other compensation for its return;
(D) sell, give, pledge, or otherwise transfer any interest in the property of another; or
(E) subject the property of another to the claim of a person other than the owner....
AS 11.46.484(a)(2) reads as follows:
*Criminal mischief in the third degree.* (a) a person commits the crime of criminal mischief in the third degree if, having no right to do so or any reasonable ground to believe he has such a right....
(2) he drives, tows away, or takes the propelled vehicle of another....

dence Rule 609(a) because robbery is not a crime involving dishonesty or false statement. The Alaska Supreme Court, however, has explicitly rejected this contention. In *Alexander v. State*, 611 P.2d 469, 476 (1980), the court said:

> We hold that robbery is a crime of dishonesty within the terms of Alaska Rule of Evidence 609(a). Thus we conclude that it was properly admissible for impeachment.

Therefore, we similarly conclude that Frankson's prior conviction was for a crime involving dishonesty or false statement.[4]

Frankson next argues that the trial judge erred in permitting the jury to learn that Frankson's prior conviction was for the same crime. He argues that the prejudicial impact of allowing the jury to learn that he had formerly been convicted of robbery outweighed the probative value of the impeachment evidence. Alaska R.Evid. 609(c). He contends that the prosecutor should have been restricted to proving that Frankson had been convicted of a crime involving dishonesty or false statement or else limited to proving that Frankson had been convicted of a larceny type crime. Frankson points out that the supreme court suggested this procedure in *Alexander v. State*, 611 P.2d at 476 n. 18 (Alaska 1980), in stating:

> It is the larceny element of robbery which makes such a conviction admissible as impeachment of a witness. Thus, had

it been requested, the defendant could have restricted the prejudicial impact of the conviction by requesting that it be referred to as a 'larceny type offense.' The forcible nature of the taking is not probative on the question of a witness' credibility and may have an inflammatory effect on a jury.

Although Frankson did not expressly call the trial judge's attention to the holding in *Alexander*, on two occasions he specifically asked the trial judge only to allow proof that Frankson had been convicted of a felony involving dishonesty or false statement.

When a defendant takes the stand in his own defense, evidence of prior convictions is frequently prejudicial. *See* Commentary to Alaska R.Evid. 609, ERC 173. When the crime with which he is impeached is the same crime for which he is currently on trial, particular caution is warranted. In Frankson's case it is clear that limiting the inquiry into Frankson's prior conviction so that the jury would not have been informed that his prior conviction was for robbery would have helped to reduce any unfair prejudice that might have resulted from the admission of Frankson's prior criminal record. We therefore agree with Frankson on this point and find that it was an abuse of discretion for the trial judge to admit Frankson's prior robbery conviction in the form in which it was admitted in this trial.[5]

---

4. In his reply brief, Frankson notes that the *Alexander* court based its holding on the larceny element of robbery. *Alexander v. State*, 611 P.2d at 476 n. 18. From this, he argues that the state failed to establish that the Washington statute under which he had been convicted contained the requisite element of larceny. The state has asked us to take judicial notice of the Washington statute and has filed supplemental authority. It is apparent that the Washington statute does contain the requisite element of larceny. *State v. Faucett*, 593 P.2d 559, 560–61, 22 Wash.App. 869 (1979). Accordingly, any error in the failure of the state to establish this fact prior to introduction of the prior crimes evidence would be harmless.

5. We have reviewed the evidence in the case and we cannot conclude that the failure to limit the inquiry into Frankson's prior conviction was harmless error. We view the impact of

the failure to limit the inquiry into Frankson's prior conviction as substantial, and we do not believe that the state's case was so strong that we can say that the admission of the evidence did not appreciably affect the jury's verdict. *Love v. State*, 457 P.2d 622, 632 (Alaska 1969).

Because of our disposition of this point on appeal, it is unnecessary for us to reach Frankson's other contentions in which he argues the trial judge improperly weighed the probative value against the prejudicial impact of Frankson's prior conviction. By our decision we do not mean to imply that Frankson's conviction is necessarily admissible if the inquiry is limited to showing his conviction was for a crime of dishonesty or false statement. Before any conviction is admitted, the trial court must weigh the probative value of the evidence against its prejudicial effect. Alaska R.Evid. 609(c).

Frankson also contends that the evidence introduced at trial was insufficient to allow the jury to convict him of first degree robbery. We must review this point on appeal at this time, because if Frankson is correct that the evidence presented at his trial was insufficient to survive a motion for judgment of acquittal, then it would violate his double jeopardy rights to allow him to be retried on these charges. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

■ Frankson first argues that the evidence presented at trial was insufficient to support conviction of any form of robbery because the state did not show that Frankson used force or the threat of force "in the course of taking or attempting to take property from the immediate presence and control of a person."[6] Frankson contends, as he did at trial, that the evidence shows that he used force on Tweiten to repel a sexual advance and not for the purpose of obtaining property from Tweiten. We have viewed the evidence presented in the case in the light most favorable to the state and we conclude that fair minded people, in the exercise of reasonable judgment, could differ on the question of whether there was sufficient evidence to prove beyond a reasonable doubt that Frankson committed robbery. *Elson v. State*, 633 P.2d 292, 298 (Alaska App.1981). Although Oscar Tweiten's account of the incident was clearly influenced by the fact that he had consumed alcoholic beverages, and perhaps also by his head injury, he testified that he had been struck on the head from behind. Tweiten's watch, which had apparently been removed from his wrist during the incident, was found in James Frankson's possession. Frankson himself admitted physically overpowering Tweiten, tying him up, and taking his money and car keys. We believe that the jury could reasonably have concluded that Frankson used force on Tweiten for the purpose of taking property from Tweiten's immediate presence and control. We therefore find no error.

■ Frankson next contends that the evidence presented at trial was insufficient for the jury to conclude that he caused or attempted to cause serious physical injury to Tweiten.[7] Frankson's robbery conviction was aggravated to first degree robbery because the jury found that he caused or attempted to cause serious physical injury to Tweiten. Serious physical injury is defined in AS 11.81.900(b)(49) as follows:

'[S]erious physical injury' means physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of a body member or organ, or physical injury which unlawfully terminates pregnancy....

Again, in reviewing the contention that a judgment of acquittal should have been granted, we look at the evidence in the light most favorable to the state. If we conclude that fair minded people in the exercise of reasonable judgment could differ on the question of whether the evidence was sufficient to conclude beyond a reasonable doubt that Frankson caused or attempted to cause serious physical injury, then the evidence was sufficient to allow the case to be submitted to the jury. *Elson v. State*, 633 P.2d at 298.

■ Frankson points to evidence that the police officer who found Tweiten described Tweiten's head injury as "a small laceration on the ... top portion of his skull" and the fact that the officer testified that Tweiten had to be persuaded to go to the hospital. Furthermore, after two or three days of observation in the hospital, Tweiten was released, apparently with no long term ill effects. We believe, however, that the testimony of Dr. Frances Kelly, an orthopedic surgeon who treated Tweiten after he was admitted to the hospital with his head injury, was sufficient to create a jury question as to whether Tweiten sustained a serious physical injury. Dr. Kelly said that Tweiten had a serious concussion, which he

---

6. AS 11.41.510, set forth in footnote 1, *supra*.

7. *See* footnote 1, *supra*.

defined as a bruising of the brain. He stated that Tweiten was disoriented from this injury for most of the time he was in the hospital. Dr. Kelly admitted Tweiten to the hospital for close observation because concussions like the one Tweiten received can pose a threat of death. In addition, Kelly described Tweiten as having fractured ribs and a minor injury to his right elbow. Kelly was read the definition of serious physical injury from the criminal code and testified that in his opinion Tweiten's injuries fell within that definition. He stated that based upon his observation of similar head injuries, he believed that Tweiten, at the time he was admitted to the hospital, faced a ten to twenty percent chance of dying from his injuries. Taking the evidence in the light most favorable to the state, we believe that the jury could reasonably conclude that the testimony established that Tweiten suffered serious physical injury. We therefore find the trial court did not err in submitting this question to the jury.[8]

The judgment of conviction is REVERSED.

---

**8.** Since we have reversed Frankson's case it is unnecessary for us to reach the other points that he has raised on appeal.