## 75829. WHITELEY v. THE STATE.
### (372 SE2d 296)

BEASLEY, Judge.

Whiteley was convicted of improper lane usage (OCGA § 40-6-40) and driving under the influence of alcohol (OCGA § 40-6-391 (A) (1) & (4)). The subsection (4) conviction was merged with the subsection (1) conviction for sentencing.

1. The primary question on appeal is whether the trial judge abused his discretion in denying a mistrial and instead instructing the jury to disregard the arresting officer's statement, which was not specifically solicited but was made in the course of explaining the preliminary tests for sobriety he conducted when he stopped defendant.

After eliciting the officer's background and referring him to the date in question, the solicitor asked the witness: "Would you tell the jury, please, in a chronological sequence, what contact you had with this defendant?" The witness gave a detailed narrative, including a description of all of the manifestations which led him to believe that defendant was driving under the influence and which caused him to arrest defendant and take him in for a statutory test. In the course of explaining what field tests he administered and their results, he stated: "I asked him to submit to another field test, which is an alcosensor test that we give out in the field also — he said he would take that. He read .12. . . ." Defendant objected, without stating the grounds, and the court immediately instructed the jury to disregard the results because they were not admissible since the field test was not developed sufficiently to be admissible at trial and was only a device for determining probable cause.

After questioning the officer out of the presence of the jury and hearing from the solicitor, defendant moved for a mistrial on the grounds of prosecutorial misconduct and inherent prejudice from the statement itself. It appeared that the state was not aware that the witness might give the results and had not talked to the witness about this evidence. It also appeared that the witness, while knowing that such test results were not admissible for the purpose of proving that defendant was driving while under the influence, did not realize that he could not give them as reason for his arrest of defendant.

The court denied the mistrial and again clearly and firmly instructed the jury not to consider the statement. It was thus summarily and conclusively excluded from evidence. The record does not support an assumption that, as a matter of law, the curative instructions were not, or could not be, adhered to by the jury; nor does it

support a conclusion that, as a matter of law, the court abused its discretion in choosing a less extreme remedy. *Stanley v. State*, 250 Ga. 3, 4 (2) (295 SE2d 315) (1982); *Barrow v. State*, 235 Ga. 635, 640 (8) (221 SE2d 416) (1975); see also *Calloway v. State*, 165 Ga. App. 511 (301 SE2d 678) (1983).

The trial judge expressly found as fact that there was no prosecutorial misconduct, and this is supported by the evidence that the state's counsel talked to the witness for only a few minutes before trial and not at all about the field test. It is implicit that he considered the officer's explanation of why he stated it. We are bound by that finding as this court is not a trial court and not a factfinder. *Byrd v. State*, 171 Ga. App. 344, 345 (3) (319 SE2d 460) (1984). As to the question of prosecutorial misconduct which may warrant mistrial, see *Hampton v. State*, 179 Ga. App. 14 (345 SE2d 117) (1986), and the cases cited therein.

It was also the trial court's judgment, based on the content and the circumstances in which the statement was uttered, that although the officer knew that the results of such tests could not be admitted as evidence of the ultimate issue of alcohol-influenced driving, the jury's hearing the statement could be cured of any influence such a hearing might have in the determination of guilt, by instruction. The trial court has broad discretion in fashioning a remedy to alleviate a problem created by the utterance of inadmissible evidence, and its exercise may not be reversed unless abused. See discussion, 28 Encyl. Ga. Law, "Trial" § 46.

The record does not support a conjecture that the trial court misapprehended that *prejudicial* error itself would not be cause for mistrial even if there was no prosecutorial misconduct in causing error. The motion was stated to be based on the two grounds, prejudicial error and prosecutorial misconduct prompting the error. After expressing the finding that there was no prosecutorial misconduct, the court explained that the instructions cured the error and, to assure that, it would so instruct the jury again. Thus it is clear that the court considered the ground of prejudice itself and rejected it. We do not assume that the court erred, particularly where the record complements the presumption that it did not.

While the ruling does not appear to be even equivocal on this point, even if it were, it would be subject to the same principle which relates to orders: "If an order is equivocal and susceptible of more than one interpretation, it will be construed consistently with the theory that the judge performed his duty by considering the evidence and making a finding from it, where the issue is one for such determination." *Fortson v. Fortson*, 195 Ga. 750, 758 (3) (25 SE2d 518) (1943). As further noted in *Smith v. Manley*, 96 Ga. App. 158, 161 (99 SE2d 534) (1957), "this court will not presume the trial court commit-

ted error where that fact does not affirmatively appear." The judge is presumed to know the law, not the opposite.

Here, then, the presumption is that the court knew that prejudicial error, when the prejudice cannot be removed by jury instruction, requires mistrial.

We cannot say that, as a matter of law, the curative instructions were insufficient in this case to ameliorate the making of the statement which was promptly expelled from evidence. We do not assume that the jury could not or did not abide by the judge's instructions. They were given immediately after the gratuitous statement was made by the witness, and the court even explained why the evidence could not be considered. Plus they were repeated as soon as the jury returned after the court and counsel considered the matter more fully out of its hearing.

While we agree that any law enforcement officer, and much more one as experienced as the witness in this case, should be apprised and apprise himself of the rules in connection with his testimony and abide by them, the law does not require a mistrial when one is breached. Whether it was a deliberate and conscious disregard in this case was not found by the trial judge, and on review we cannot make original findings or assume facts. We cannot ascertain from the record the manner in which it was said or the inflections and other facets of the excised communication. Nor can we sit in judgment of the sincerity of the witness when asked to explain the making of the statement, since we were not present to hear or observe him as was the trial judge.

Even if it was uttered with a sinister motive, a mistrial would not be *required*, because the question is one of fair trial. *Stanley*, supra. The chastisement of errant officer witnesses, in the absence of incurable prejudice to defendant arising from the officer's error as a matter of law, gives the mistrial a different, administrative purpose. It reaches beyond a consideration of whether the trial court, whose duty is to provide defendant with a fair trial and not to use trial abortion to sanction law enforcement officers for testimonial errors, erred in excising the statement rather than starting the trial anew. The trial court's role, in considering a mistrial, is to determine if such "is essential to the preservation of the right to a fair trial, . . ." *Stanley*, supra at 4; *Eaton v. State*, 184 Ga. App. 645, 646 (2) (362 SE2d 375) (1987). Our role, as an intermediate appellate court, is limited to correcting lower court errors of law. Ga. Const. 1983, Art. VI, Sec. V, Par. III; *Byrd*, supra at 345 (3).

2. Appellant finds fault also with the remark of the trial court when interrupting defendant's closing argument. The argument is not transcribed, so we do not know precisely what counsel said which the trial court believed was misleading. From what counsel and the court

said at the interjection and thereafter, however, it appears that counsel was creating the impression that the breath (intoximeter) test, rather than a blood test, did not have the law's approval as an accurate measuring device. Since it does, by legislative policy, OCGA § 40-6-392, the trial court was correct.

Of course, this derivation of what was said by counsel in argument, and the corresponding reaction of the court, is handicapped by the absence of a record of what the trial court was referring to. But it is appellant's obligation to provide the record substantiating his claim, OCGA § 5-6-41, and in its absence, we must affirm as to that issue. *Dyer v. State*, 154 Ga. App. 421, 422 (268 SE2d 758) (1980).

A new trial (or ultimate discharge of defendant on double jeopardy grounds, considering the egregiousness of the error as viewed by appellant, see the discussion in *Hampton*, supra) is not required since Whiteley was not deprived of his right to a fair trial, and the judgment of conviction should stand as to this issue.

3. Whiteley enumerates the admission into evidence of the intoximeter printed results. Officer Jones, the operator of the Intoximeter 3000, testified as to the results of the test which he administered to Whiteley. The State tendered into evidence one of the three copies produced by the machine at the time the test was administered. The exhibit was objected to on two grounds: (1) hearsay and (2) cumulative, serving as a written memo of testimony already given and therefore unduly emphasizing that evidence.

The operating record was not subject to the objections made. "As a writing in proof of an act or transaction, the instant report was admissible as *direct evidence* of the manner in which a scientific test was conducted and of the results thereby obtained. [Cits.] The proscription on the jury's possession of 'written testimony' does not extend to documents which are themselves relevant and admissible as original documentary evidence in a case. [Cit.]" *Munda v. State*, 172 Ga. App. 857, 860 (2) (324 SE2d 799) (1984).

4. Defendant claims error in the failure to give his requested charge cautioning that a police officer's testimony should not be given weight due to his position. The court gave the Suggested Pattern Jury Instructions charge on credibility of witnesses. This was sufficient. *Vasquez v. State*, 182 Ga. App. 850, 851 (2) (357 SE2d 302) (1987). We find no Georgia authority supporting the requested instruction or regarding as reversible error the failure to give it.

5. Defendant also contends that his requested charge on reckless conduct, OCGA § 16-5-60, was required to be given as a lesser included offense of DUI. Apparently, defendant contends that the accusation under which he was tried alleged this crime as well as DUI, thereby entitling him to a jury charge on it.

Since reckless conduct requires harm or danger to "another per-

son," an element not required by OCGA § 40-6-391 to be alleged and proven, it is not a lesser included offense as a matter of law. OCGA § 16-1-6 (2); see *Horowitz v. State*, 243 Ga. 441 (254 SE2d 828) (1979); *Bowers v. State*, 177 Ga. App. 36, 39 (2) (338 SE2d 457) (1985). It also was not a lesser included crime as a matter of fact, because the accusation includes no allegation of harm or danger to another person and there was no proof of such at trial. Therefore, no charge on this separate crime was required. OCGA § 16-1-6 (1); *State v. Hightower*, 252 Ga. 220, 221 (312 SE2d 610) (1984).

*Judgment affirmed. Deen, P. J., McMurray, P. J., and Pope, J., concur. Carley, J., concurs in Divisions 2, 3, 4, 5, and in the judgment. Birdsong, C. J., Banke, P. J., Sognier and Benham, JJ., dissent.*

BIRDSONG, Chief Judge, dissenting.

The majority concedes the inadmissibility of breath analysis test results because the alcosensor device does not prove blood-alcohol content, but says any prejudice caused by the blurting out of this evidence by a State's witness who well knew it was inadmissible, was cured by the trial court's "expelling" it from the evidence. With that conclusion in Division 1, we do not necessarily disagree.

Abruptly, however, the majority then turns about-face and espouses the exact opposite evidentiary premise, so as to excuse the trial court's remark before the jury that defense counsel's closing argument contending the test did not prove blood-alcohol content was "somewhat misleading," and that "[y]ou [defense counsel] stated twice it's not blood-alcohol. The law . . . allows analysis of . . . breath . . . to establish blood alcohol content."

With this statement, the trial court *validated the alcosensor breath test as analytic proof of intoxication, and reinserted the police officer's prejudicial testimony as to the results.* And the majority in Division 2 says this statement was correct, "[s]ince [the alcosensor test] by legislative policy [*has the law's approval as an accurate measuring device*], OCGA § 40-6-392.*"

This statement by the majority is a complete misconstruction of the plain words of the law, and a direct contradiction of its own holding in Division 1. OCGA § 40-6-392 does *not* approve a breathalyzer "as an accurate measuring device" to prove blood alcohol content. The statute, at paragraph (a) only approves, as admissible at trial, "evidence of the amount of alcohol . . . *in a person's blood* at the alleged time, *as determined by* a chemical analysis of the person's . . . *breath*. . . ." (Emphasis supplied.)

In paragraph (b) of § 40-6-392, it is provided that upon a trial for DUI, "the amount of alcohol *in the person's blood* at the time alleged, *as shown by a chemical analysis of the person's . . . breath . . .* shall

give rise to the following presumptions. . . ." (Emphasis supplied.)

Since the breath test, as conceded by the majority in Division 1, does not prove the amount of alcohol *in the person's blood,* it is not admissible under § 40-6-392. But in Division 2, the majority says it is an accurate measuring device for blood alcohol content under § 40-6-392.

Appellant's entire defense was that he had ingested pizza with beer immediately before being stopped, and *"at the time alleged"* (id.) was not driving under the influence in violation of the code sections because the alcohol content *in his blood* was not proved to the presumptive DUI standards of § 40-6-392 (b). Regardless what one may think of this defense, the appellant is entitled to have it. If the impression given by the police officer as to his blood alcohol content by blurting out the .12% results of the *breath* test was "expelled" by the trial court's curative instruction, this prejudice was reinjected powerfully when the trial court called "somewhat misleading" the defense position "that [according to the majority's inference] the breath test . . . did not have the law's approval as an accurate measuring device" proving blood alcohol content.

When the trial court incorrectly stated, in the jury's presence that "[t]he law . . . allows analysis of . . . breath . . . to establish blood alcohol content," the denuding of the defense was complete. Enough of the dialogue in closing argument was transcribed to show clearly what it was the defense had argued and what the trial court labelled "misleading." In finding what it appeared the defense counsel argued and that the trial court's statements were correct, the majority concedes this much. Despite the majority's gratuitous remark about the defendant's failure to substantiate his claim by providing the whole record of closing argument, the one we have before us is more than enough to clearly prove the trial court powerfully resuscitated and exacerbated the prejudice originally caused by the State's witness blurting out the alcosensor results which he knew were inadmissible.

If the majority, as it does, must make completely antithetical arguments as to two separate errors, and in my opinion incorrectly interpret the statute's clear meaning, in order to rule both of the errors harmless, then the majority, in disproving itself, has proved the conviction cannot be sustained. The jury, having been incorrectly told by the judge that the appellant's defense was "misleading," could not possibly reach a fair verdict.

The appellant should be entitled to a new trial.

I respectfully dissent. I am authorized to state that Presiding Judge Banke, Judge Sognier and Judge Benham join in this dissent.

DECIDED JULY 15, 1988 —
REHEARING DENIED JULY 29, 1988 

*Victor C. Hawk,* for appellant.
*Michael C. Eubanks, Solicitor, H. Scott Allen, Assistant Solicitor,* for appellee.