## A96A0501. UNDERWOOD v. THE STATE.
### (470 SE2d 699)

BLACKBURN, Judge.

Charlie Underwood appeals his conviction for burglarizing a house that formerly belonged to his father.

1. Underwood contends that the trial court erred in failing to direct a verdict on the burglary count as there was insufficient evidence that he actually entered the house. Viewing the evidence in the light most favorable to the verdict, in 1994 Underwood's father was convicted of a drug crime, and in January 1995, several months prior to the burglary, the house was forfeited to the State pursuant to OCGA § 16-13-49. The order permitting the forfeiture gave Underwood's father 30 days to make arrangements with the Sheriff of Meriwether County for the removal of all personal property in the house. After the forfeiture, Underwood was instructed not to go into his father's former residence, and the locks securing the house were changed.

On April 30, 1995, a man who lived next door to the house saw Underwood and another man drive a white truck next to the house. The neighbor called the authorities to report the incident. At the

same time, another neighbor who lived across the street also saw two men pull into the driveway. While at the house, she witnessed the two men load the white truck they were driving with a mattress and an air conditioner. Both neighbors testified that the two men hurriedly left the residence when a sheriff's vehicle came into view. Underwood's former boss testified that on the day in question, pursuant to Underwood's request, he loaned Underwood a truck that met the description later provided by the two neighbors.

Agent Nash of the Coweta Judicial Circuit Drug Task Force arrived at the residence shortly after the incident was reported. He found the door closest to the carport standing open and signs of forced entry at a back window. All utilities to the house had been shut off, and water running from the hot water tank to the floor indicated that someone had recently been in the house. Agent Nash testified that various items were missing from the home, including a bed and a refrigerator. The refrigerator required two men to lift.

During the trial, Underwood testified that he went to the above residence on the date in question to check the mail. He found the door to the residence unlocked and sent the man who was accompanying him to check the inside of the house. Meanwhile Underwood looked around the outside yard. According to Underwood, his companion who was named "Chris" left the house with a bed that he loaded on the truck and then made a second trip inside the house whereupon he retrieved an air conditioner which Underwood helped load on the truck.

"To warrant a conviction on circumstantial evidence, the proved facts need exclude only *reasonable* hypotheses — not bare possibilities that the crime could have been committed by someone else. Questions of reasonableness are generally decided by the jury, and this court will not disturb the jury's finding that the evidence was sufficient to exclude every reasonable hypothesis save that of guilt unless the verdict is unsupportable as a matter of law. Even when the defendant is the sole eyewitness, the defendant's explanation may be rejected by the jury where that explanation is inconsistent with other direct and circumstantial evidence." (Citations and punctuation omitted.) *Morris v. State*, 202 Ga. App. 673, 674 (415 SE2d 485) (1992). In light of the above, we find the trial court did not err in failing to direct a verdict. See *Tiller v. State*, 218 Ga. App. 418, 419 (461 SE2d 572) (1995) ("A directed verdict is proper only when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law").

2. Underwood contends that his conviction should be reversed as the State failed to prove that the items inside the house were of any value such that Underwood may have had the intent to steal. It is not necessary to prove the exact value of the personal property found

within the house in order for the burglary conviction to stand. *Carroll v. State*, 185 Ga. App. 857, 859 (366 SE2d 232) (1988). Rather, the State must offer evidence " 'sufficient to authorize a finding that such personalty had some value' " such that the jury can reasonably infer the intent to steal. Id. The testimony that the house contained furniture and appliances as well as the evidence that Underwood made special arrangements to drive a truck on the day in question would permit a jury to infer that Underwood had the intent to steal.

3. In his final enumeration of error, Underwood asserts that the intent to commit a felony or theft is a required element of a burglary and, because one cannot steal from one's self, he lacked the requisite intent necessary for a burglary conviction. In particular, Underwood contends that all items remaining in the house belonged to him. These items, Underwood argues, were not specifically listed in the forfeiture petition as required by OCGA § 16-13-49 (o) (1), and thus were not forfeited to the State. See *State v. Henderson*, 263 Ga. 508, 509 (436 SE2d 209) (1993) (civil forfeiture statute must be strictly construed). Thus, pursuant to the evidence, Underwood asserts that the most he would be guilty of was criminal trespass, not burglary.

In essence, Underwood asks us to find, as a matter of law, that the State had no ownership interest in the personal property found within the house. This we cannot do. Pretermitting the issue of whether the forfeiture of a residence extends to all items of personal property found within that residence is the evidence of abandonment. The order permitting the forfeiture provides: "[Underwood's father] shall have thirty days to make arrangements with the Sheriff . . . to remove all personal items now located within the residence and the property." The evidence reflects that Underwood was aware of the forfeiture order and actively helped his father defend against it. The evidence also reflects that the majority of personal items found in the house were removed before the 30 days lapsed. Thus, the record would support a finding that the personal property located within the house on the date of the burglary was abandoned to the State. See *Arlington Cemetery Corp. v. Bindig*, 212 Ga. 698, 704 (95 SE2d 378) (1956) (abandonment of a property interest is a mixed question of law and fact, and the intent to abandon is " 'inferable from the acts of the parties, interpreted in the light of all the surroundings' "). We find the evidence sufficient to permit the jury's inference that Underwood had the intent to steal.

Moreover, we disagree with Underwood's contention that, at most, he should have been found guilty of criminal trespass. First, we note that Underwood did not require that the jury be instructed on the lesser included crime of criminal trespass, and even if he had, such a charge would not be merited. In previous burglary cases where the defendant has denied entering the burglarized premises,

we have held that trespass instructions are not appropriate. *Wyley v. State*, 169 Ga. App. 106, 109 (311 SE2d 530) (1983); *Johnson v. State*, 164 Ga. App. 429, 430 (296 SE2d 775) (1982). We reasoned that the jury had the choice either to convict the defendant of burglary if it believed the State's evidence or to acquit the defendant if the State did not meet its burden; however, the jury would not be permitted the compromise choice of disbelieving the defendant and "return[ing] a verdict of guilty on the lesser offense of criminal trespass, differing from burglary only in criminal intent." *Wyley*, supra; compare *Hambrick v. State*, 190 Ga. App. 119 (378 SE2d 340) (1989) (charge on criminal trespass permitted where defendant admitted entering premises but asserted his intent was to scavenge for food and to get warm, not to steal).

*Judgment affirmed. Beasley, C. J., and Birdsong, P. J., concur.*

DECIDED MARCH 12, 1996 —
RECONSIDERATION DENIED APRIL 2, 1996.

*Knight, Stemberger & Gomez, Mark A. Gomez*, for appellant.
*Peter J. Skandalakis, District Attorney, David S. McLaughlin, Assistant District Attorney*, for appellee.