## A06A2124. ADAMS v. THE STATE.
(644 SE2d 426)

PHIPPS, Judge.

Glenn Edward Adams was charged with burglarizing four day-care centers. At trial, the state elected not to proceed on one of the charges, the court directed a verdict for Adams on two of the charges, and the jury found him guilty on the remaining charge. Adams claims that the trial court erred by (1) denying his motion for directed verdict on the final burglary charge, (2) allowing an exhibit to remain with the jury during deliberations, (3) allowing the state to introduce a misdemeanor conviction as impeachment evidence, and (4) failing to charge on a lesser included offense. We conclude that the trial court erred by allowing the state to use the former conviction for impeachment purposes, but find that the error was harmless. We find no merit in Adams's other claims. Therefore, we affirm.

Adams was convicted of burglarizing the Clayton County Headstart Center. Viewed in the light most favorable to the verdict, the evidence related to that burglary showed that on the morning of July 17, 2003, an employee opened the Headstart Center and noticed that a window had been "broken into." The employee did not notice if anything was missing, but did testify that a toy mop that was usually inside was outside.

John Patterson with the Clayton County Sheriff's Office responded to the call at the Headstart Center. Patterson took a swabbing of dried blood found on the interior window ledge. Based on information obtained about the other daycare center burglaries, Adams was identified as a suspect, and, pursuant to a search warrant, a sample of Adams's blood was taken. A forensic biologist with the Georgia Bureau of Investigation (GBI) was given the swabbing from the window ledge and Adams's blood sample and asked to analyze DNA. He testified that the results of his testing showed that the DNA taken from the window ledge originated from Adams "or his identical twin." Adams did not challenge the procedures used in or the results obtained from the DNA analysis.

1. Adams claims that the trial court erred by denying his motion for directed verdict. He argues that there was no evidence that any property was stolen from the premises and no evidence of his intent to commit a theft.

The standard of review for the denial of a motion for directed verdict is the same as that for determining the sufficiency of the evidence to support a conviction.[1]

---

[1] *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001).

On appeal from a criminal conviction, the evidence is construed in the light most favorable to the verdict of guilt, and the presumption of innocence no longer applies. As an appellate court, we do not weigh the evidence, judge the credibility of witnesses, or resolve conflicts in trial testimony when the sufficiency of the evidence is challenged. Instead, we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within a building or any room or part thereof.[3] "To complete the crime of burglary, it is not necessary that a defendant actually commit a completed theft; it is sufficient if he enters without authority and with the intent to commit a theft or felony."[4]

Contrary to Adams's contention, the state was not required to show that valuables were present in the building to prove intent.[5] Intent may be inferred from evidence that valuables were present, but criminal intent may also be inferred from other evidence.[6]

Intent may be found by the jury upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is being prosecuted. Whether a defendant has the requisite intent to commit a crime is a question for the jury.[7]

Here, Adams's blood, or that of his identical twin,[8] was found on the interior window ledge of the building. Adams offered no explanation as to how his blood got there, but instead testified that he did not even know where the daycare center was located. Thus, a trier of fact could infer that Adams's blood was left at the time the daycare center was broken into.[9] And even without evidence that anything was stolen, the jury could infer an intent to steal based on the evidence of

---

[2] *Neal v. State*, 271 Ga. App. 283, 285 (1) (609 SE2d 204) (2005) (citation omitted).

[3] OCGA § 16-7-1 (a).

[4] *Igle v. State*, 223 Ga. App. 498, 500 (3) (478 SE2d 622) (1996) (citations omitted).

[5] *Palmer v. State*, 243 Ga. App. 656, 657 (533 SE2d 802) (2000).

[6] Id.

[7] Id. (citations omitted).

[8] Adams testified that he had a twin sister who lived in Florida, but there is no evidence that he had an identical twin.

[9] See *Brown v. State*, 180 Ga. App. 188 (348 SE2d 575) (1986) (fingerprint evidence sufficient to support burglary conviction).

an unlawful entry into a building housing an operating business.[10] The evidence was sufficient to authorize a rational trier of fact to find Adams guilty of burglary beyond a reasonable doubt.[11]

2. Adams claims that the trial court erred by allowing state's Exhibit 13 to go out with the jury during deliberations. State's Exhibit 13 was an "Official Report" from the GBI Division of Forensic Sciences showing a list of DNA isolation procedures performed on the blood swabbing taken from the interior window ledge and Adams's blood sample, and the results of the tests performed on those samples.

At trial, Adams objected that allowing the exhibit to go out with the jury would violate the continuing witness rule.

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.[12]

The types of documents that have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations.[13]

We have previously allowed test results to go out with the jury over similar objections.[14] Consistent with our prior holdings, we conclude that the GBI's report was not subject to the objection made.

> As a writing in proof of an act or transaction, the instant report was admissible as direct evidence of the manner in which a scientific test was conducted and of the results thereby obtained. The proscription on the jury's possession of "written testimony" does not extend to documents which

---

[10] See *Studiemeyer v. State*, 278 Ga. App. 756-757 (1) (629 SE2d 593) (2006) (even without proof of stolen items, jury could infer intent to steal where evidence showed unlawful entry into occupied apartment).

[11] See *Brown*, supra, 180 Ga. App. at 189; *Palmer*, supra, 243 Ga. App. at 658.

[12] *Starks v. State*, 240 Ga. App. 346, 350 (4) (523 SE2d 397) (1999) (citation and punctuation omitted).

[13] Id.

[14] See *Tanner v. State*, 259 Ga. App. 94, 97-98 (3) (576 SE2d 71) (2003) (results of tests run on bullets and cartridge cases); *Wilson v. State*, 256 Ga. App. 741, 744 (3) (569 SE2d 640) (2002) (marijuana analysis reports); *Starks*, supra (crime lab report showing tested material contained cocaine); *Whiteley v. State*, 188 Ga. App. 129, 132 (3) (372 SE2d 296) (1988) (intoximeter printed results).

are themselves relevant and admissible as original documentary evidence in a case.[15]

Thus, the trial court did not err by allowing the report to go out with the jury.[16]

3. Adams claims that the trial court erred by allowing the state to impeach his credibility with a misdemeanor conviction for theft by receiving stolen property.[17] The trial court ruled that theft by receiving stolen property is an offense involving dishonesty within the meaning of OCGA § 24-9-84.1 (a) (3), and Adams takes issue with that ruling.

OCGA § 24-9-84.1 was enacted in 2005 to establish guidelines for the use of criminal convictions to impeach witnesses or defendants who testify.[18] Under paragraph (a) (3), "[e]vidence that any witness or the defendant has been convicted of a crime shall be admitted if it involved dishonesty or making a false statement, regardless of the punishment that could be imposed for such offense." Georgia appellate courts have not yet addressed which crimes involve "dishonesty" within the meaning of the statute.[19]

The General Assembly, in enacting the statute at issue, chose to use the language of the Federal Rules of Evidence Rule 609 (a) (2).[20] It is established in the United States Court of Appeals for the Eleventh Circuit that crimes such as theft, robbery, or shoplifting do not involve "dishonesty or false statement" within the meaning of Rule 609 (a) (2).[21] In *United States v. Ashley*,[22] the United States Court of Appeals for the Fifth Circuit looked to the Conference Committee Notes in determining that shoplifting was not a conviction involving dishonesty or false statement within the meaning of Rule 609 (a) (2). According to the Conference Committee Notes to the federal rule, crimes involving "dishonesty and false statement" include

---

[15] *Whiteley*, supra (citation, punctuation and emphasis omitted).

[16] See id.

[17] A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should have known was stolen. OCGA § 16-8-7 (a).

[18] *Hinton v. State*, 280 Ga. 811, 818 (7) (631 SE2d 365) (2006).

[19] The state does not claim that the prior conviction involved "making a false statement," and it seems clear that it does not. Thus, our analysis is limited to whether it is a crime of dishonesty within the meaning of the statute.

[20] At the time the Georgia statute was enacted, Rule 609 (a) (2) provided that for the purpose of attacking the credibility of a witness, "evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment."

[21] *United States v. Sellers*, 906 F2d 597, 603 (11th Cir. 1990).

[22] 569 F2d 975, 979 (5th Cir. 1978).

crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.[23]

"[I]n its broadest sense, the term 'crimen falsi' has encompassed only those crimes characterized by an element of deceit or deliberate interference with a court's ascertainment of truth."[24]

Other federal circuits also have concluded that theft and similar crimes do not involve dishonesty within the meaning of Rule 609 (a) (2) and therefore are not admissible for impeachment purposes.[25] The focus of the federal appellate courts seems to be on the propensity for dishonesty on the witness stand.

State appellate courts with evidence rules similar to Rule 609 (a) (2) are not so uniform in their approach to this issue. In Arizona,[26] North Dakota,[27] and West Virginia,[28] prior convictions for theft by receiving stolen property are not admissible for impeachment purposes as crimes involving "dishonesty or false statement" within the meaning of those state's statutes. Other state courts also have refused to admit theft-related crimes because they are not crimes

---

[23] 1974 U.S.C.C.A.N. 7098.

[24] *United States v. Smith*, 551 F2d 348, 362-363 (D.C. Cir. 1976).

[25] See *United States v. Grandmont*, 680 F2d 867, 871 (1st Cir. 1982) (robbery per se is not crime of dishonesty); *United States v. Hayes*, 553 F2d 824, 827 (2d Cir. 1977) (burglary and petit larceny are not crimes that bear directly on likelihood that defendant will testify truthfully); *Walker v. Horn*, 385 F3d 321, 334 (3d Cir. 2004) (robbery is very serious crime, but does not involve communicative or expressive dishonesty); *Govt. of Virgin Islands v. Testamark*, 528 F2d 742, 743 (3d Cir. 1976) (petit larceny not a misdemeanor in the nature of crimen falsi); *United States v. Amaechi*, 991 F2d 374, 379 (7th Cir. 1993) (including petty shoplifting as crime of dishonesty would swallow the rule and allow any past crime to be admitted for impeachment purposes); *United States v. Yeo*, 739 F2d 385, 387 (8th Cir. 1984) (theft, which involves stealth and demonstrates lack of respect for persons or property of others, is not characterized by element of deceit or deliberate interference with court's ascertainment of truth); *United States v. Ortega*, 561 F2d 803, 806 (9th Cir. 1977) ("dishonesty and false statement" limited to crimes involving some element of misrepresentation or other indication of propensity to lie; human experience does not justify inference that person will perjure himself from proof of prior conviction for petty shoplifting); *United States v. Dunson*, 142 F3d 1213, 1215 (10th Cir. 1998) (shoplifting not automatically crime involving "dishonesty or false statement"); *United States v. Fearwell*, 595 F2d 771, 776 (D.C. Cir. 1978) (petit larceny does not involve dishonesty or false statement; it has no bearing whatsoever on defendant's propensity to testify truthfully).

[26] *State v. Terrell*, 753 P2d 189, 192 (Ariz. 1988).

[27] *State v. Eugene*, 340 NW2d 18, 32-33 (N.D. 1983).

[28] *State v. Jenkins*, 443 SE2d 244, 248 (W.Va. 1994).

involving dishonesty.[29] Many of these courts have adopted the reasoning of the federal courts that a crime of dishonesty is one that bears on a witness's propensity to testify truthfully or that involves some element of deceit or falsification.

However, in Illinois,[30] Ohio,[31] and Pennsylvania,[32] courts have admitted prior convictions for theft by receiving stolen property for impeachment purposes as crimes involving "dishonesty" within the meaning of those state's statutes. And other states have admitted theft-related crimes based on a determination that they are crimes of dishonesty.[33] In most of these cases, the courts offer no explanation for their determination that theft crimes involve dishonesty within the meaning of the statute. In *State v. Al-Amin*,[34] however, the South Carolina Court of Appeals engaged in a lengthy discussion of federal and state cases on the topic before concluding that armed robbery is a crime of dishonesty within the meaning of South Carolina's impeachment statute because it is dishonest to steal.

In Georgia, prior to the enactment of OCGA § 24-9-84.1, a witness could be impeached by proof of general bad character or by proof that the witness had been convicted of a crime of moral turpitude.[35] Under that rule, theft and shoplifting were considered crimes of moral turpitude.[36] Instead of expressly codifying the existing law, the legislature adopted the language of the federal rule, thus using "dishonesty or false statement" instead of "moral turpitude." Had the legislature intended for the new law to be applied in the same manner as the existing law, it seems logical that it would have used the same language. We are persuaded by the reasoning of the

---

[29] *People v. Parcha*, 575 NW2d 316, 321 (Mich. App. 1997) (larceny conviction does not contain "element of dishonesty" as used in statute); *State v. Ross*, 491 NW2d 658, 660 (Minn. 1992) (burglary not a crime directly involving "dishonesty or false statement"); *Blackman v. State*, 659 S2d 583, 585 (Miss. 1995) (larceny and shoplifting are not crimes involving crimen falsi); *State v. Ellis*, 303 NW2d 741, 751-752 (Neb. 1981) (petit larceny not shown to involve deceit or deception so as to be classified crimen falsi); *State v. Lanier*, 778 P2d 9, 11 (Utah 1989) (robbery and second degree burglary not crimes of "dishonesty or false statement" unless committed by fraudulent or deceitful means bearing directly on defendant's likelihood to testify truthfully).

[30] *People v. White*, 407 NE2d 572, 577 (Ill. App. 1980).

[31] *State v. Brown*, 621 NE2d 447, 454-455 (Ohio App. 1993).

[32] *Commonwealth v. Ellis*, 549 A2d 1323, 1334 (Pa. Super. 1988).

[33] *Frankson v. State*, 645 P2d 225, 228 (Alaska App. 1982) (robbery is crime of dishonesty); *James v. State*, 622 SW2d 669, 670 (Ark. 1981) (grand larceny and theft are crimes involving dishonesty); *Webb v. State*, 663 A2d 452, 461 (Del. 1995) (misdemeanor shoplifting is crime of dishonesty); *State v. Crowley*, 552 P2d 971, 975 (Kan. 1976) (burglary and larceny are crimes involving dishonesty); *State v. Al-Amin*, 578 SE2d 32, 43 (S.C. App. 2003) (armed robbery is crime of dishonesty); *State v. Martin*, 642 SW2d 720, 724 (Tenn. 1982) (attempted armed robbery, burglary and concealing stolen property are crimes of dishonesty).

[34] Supra.

[35] *Sapp v. State*, 271 Ga. 446, 448 (2) (520 SE2d 462) (1999).

[36] Id.

Eleventh Circuit, other federal circuit courts and many state courts that, for impeachment purposes, crimes of "dishonesty" are limited to those crimes that bear upon a witness's propensity to testify truthfully.[37]

Our conclusion that the term "dishonesty" must be somewhat limited in this context is also guided by the fact that, under OCGA § 24-9-84.1 (a) (3), prior convictions involving dishonesty or making a false statement must be admitted, regardless of the punishment that could be imposed and without balancing the probative value of admitting the evidence against the prejudicial effect to the witness, as is required before admitting prior convictions under paragraphs (a) (1) and (a) (2) of the statute. In addition, several courts have recognized that although theft is not necessarily a crime of dishonesty or false statement, it may be admissible nonetheless if the crime was committed by fraudulent or deceitful means.[38] The state has the burden of producing facts demonstrating that the particular conviction involved fraud or deceit.[39] The state did not produce any such facts in this case.

Contrary to the claim of the special concurrence, it does not seem plausible that the General Assembly intended for the term "dishonesty" in this context to be so broadly defined as to include any behavior that may be condemned as dishonest. Moreover, the Supreme Court of Georgia recently considered the constitutionality of another paragraph of the same statute, OCGA § 24-9-84.1 (b). In its analysis, the Supreme Court noted that the General Assembly had used the language of Federal Rules of Evidence Rule 609 (b) and relied on decisions of the United States Court of Appeals for the Fifth Circuit and a state appellate court that had reviewed an identical rule.[40] We follow the same approach in our analysis of OCGA § 24-9-84.1 (a) (3).

Accordingly, we conclude that Adams's prior conviction for misdemeanor theft by receiving stolen property is not a crime involving dishonesty within the meaning of OCGA § 24-9-84.1 (a) (3). The trial court therefore erred by admitting it.

Although the trial court should not have allowed the prior conviction to be admitted, the error does not necessarily require a new

---

[37] While we are not bound by decisions of the federal circuit courts, they are persuasive. *McKeen v. Fed. Deposit Ins. Corp.*, 274 Ga. 46, 48, n. 1 (549 SE2d 104) (2001); see *Hinton*, supra, 280 Ga. at 819.

[38] See, e.g., *United States v. Yeo*, supra, 739 F2d at 388; *United States v. Grandmont*, supra, 680 F2d at 871; *United States v. Smith*, supra, 551 F2d at 364, n. 28 (court gives example of theft by false pretenses); *State v. Eugene*, supra, 340 NW2d at 33; *State v. Jenkins*, supra, 443 SE2d at 248.

[39] *United States v. Yeo*, supra.

[40] *Hinton*, supra, 280 Ga. at 819 (7).

trial. In a criminal case, the standard for weighing nonconstitutional error is known as the "highly probable test," i.e., whether it is highly probable that the error did not contribute to the judgment.[41] Under that test, a reversal is not required if the evidence of guilt is overwhelming such that there is no reasonable probability that the jury's verdict would have been different absent this error.[42] Here, Adams's conviction for the Headstart Center burglary was based on unchallenged DNA evidence that linked him directly to the crime. In light of this evidence, we conclude that the error in admitting the misdemeanor conviction for theft by receiving stolen property was harmless.[43]

4. Adams claims that the trial court erred by failing to give his requested jury charge on the lesser included offense of criminal trespass. However,

> where the defendant has denied entering the burglarized premises, we have held that trespass instructions are not appropriate. We reasoned that the jury had the choice either to convict the defendant of burglary if it believed the State's evidence or to acquit the defendant if the State did not meet its burden; however, the jury would not be permitted the compromise choice of disbelieving the defendant and returning a verdict of guilty on the lesser offense of criminal trespass, differing from burglary only in criminal intent.[44]

*Judgment affirmed. Ruffin, J., concurs. Smith, P. J., concurs specially.*

SMITH, Presiding Judge, concurring specially.

I write separately because I believe the majority's interpretation of OCGA § 24-9-84.1 (a) (3) violates Georgia's rules of statutory construction.

Regardless of how the federal courts or the courts of other states have interpreted the language found in OCGA § 24-9-84.1 (a) (3), Georgia courts must look first to their own direct instructions with regard to statutory interpretation. "In all interpretations of statutes,

---

[41] *Felder v. State*, 266 Ga. 574, 576 (2) (468 SE2d 769) (1996); see also *Hanson v. State*, 263 Ga. App. 45, 46-47 (1) (587 SE2d 200) (2003).

[42] *Felder*, supra.

[43] See id.

[44] *Underwood v. State*, 221 Ga. App. 93, 95-96 (3) (470 SE2d 699) (1996) (citations and punctuation omitted); cf. *Hiley v. State*, 245 Ga. App. 900 (539 SE2d 530) (2000) (where accused admits unauthorized entry but denies intent to commit felony or theft, trial court must give requested charge on lesser included offense of criminal trespass).

the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter." OCGA § 1-3-1 (b). "[J]udicial construction is necessary only when a statute is ambiguous; in fact, when the language of a statute is plain and unequivocal, judicial construction is not only unnecessary but forbidden. [Cit.]" *Fleming v. State*, 271 Ga. 587, 589 (523 SE2d 315) (1999). We may not resort to judicial construction by means of comments to a federal statute, and cases interpreting those comments, when our own statute is unambiguous.

Here, the term "dishonesty" is a word in common use and with a meaning known to all. Webster's New Universal Unabridged Dictionary (2nd ed.) defines it as "the quality of being dishonest; dishonest behavior; deceiving, stealing, etc." The word is not limited to untruthfulness under oath, but includes such matters as fraud and theft. Clearly, one who has been convicted of defrauding a client or of stealing another's checkbook and writing checks from it is guilty of "dishonesty." And one who "receives, disposes of, or retains stolen property which he knows or should know was stolen," OCGA § 16-8-7 (a), has committed an act commonly acknowledged to be "dishonest." The meaning of "dishonesty" is clear and unambiguous. "Courts of last resort must frequently construe the language of a statute, but such courts may not substitute by judicial interpretation language of their own for the clear, unambiguous language of the statute, so as to change the meaning." *Frazier v. Southern R. Co.*, 200 Ga. 590, 593 (2) (37 SE2d 774) (1946).

Moreover, we cannot ignore the inclusion of the term "making a false statement" with the term "dishonesty" as a disjunctive, allowing impeachment if the crime "involved dishonesty *or* making a false statement." (Emphasis supplied.) OCGA § 24-9-84.1 (a) (3). "It is a well-established principle that a statute must be viewed so as to make all its parts harmonize and to give a sensible and intelligent effect to each part. It is not presumed that the legislature intended that any part would be without meaning. [Cit.]" *Houston v. Lowes of Savannah*, 235 Ga. 201, 203 (219 SE2d 115) (1975). The majority's proposed interpretation of "dishonesty" makes that word redundant and meaningless, and "[i]t is contrary to the generally accepted principles for construing statutes to 'read out' any part of the statute as 'mere surplusage' unless there is a clear reason for doing so. [Cits.]" *Porter v. Food Giant*, 198 Ga. App. 736, 738 (1) (402 SE2d 766) (1991). Had the General Assembly intended to limit the term "dishonesty" to failing to testify truthfully in court, it would be a redundant and unnecessary term, given the inclusion of "making a false statement."

For these reasons, I cannot agree with the majority's conclusion in Division 3 that the definition of "dishonesty" in OCGA § 24-9-84.1 (a) (3) does not include theft by receiving stolen property. Therefore,

in my view, the trial court did not err in admitting Adams's prior conviction for misdemeanor theft by receiving.

DECIDED MARCH 27, 2007.

*David J. Walker*, for appellant.
*Jewel C. Scott, District Attorney, Anece Baxter White, Assistant District Attorney*, for appellee.