A06A0955. DAVIS v. THE STATE.
(637 SE2d 431)

RUFFIN, Chief Judge.

A jury found Sean Davis guilty of criminal attempt to traffic in cocaine.[1] Davis appeals, raising numerous enumerations of error that challenge the sufficiency of the indictment, the sufficiency of the evidence, and the trial court's charge to the jury. He also argues that the trial court improperly admitted certain evidence at trial. For reasons that follow, we affirm.

On appeal from his criminal conviction, Davis no longer enjoys a presumption of innocence, and we view the evidence in a light favorable to the jury's verdict.[2] We do not assess witness credibility or weigh the evidence, "but merely determine whether the evidence [was] sufficient to enable a rational trier of fact to find all the essential elements of the crime charged beyond a reasonable doubt."[3]

Viewed in this manner, the evidence shows that the charges against Davis arose from an undercover operation conducted by authorities using a confidential informant, Vicente Colon. Colon informed Sergeant Jody Thomas of the Fayette County Sheriff's

---

[1] Davis was also charged with one count each of possession of a firearm by a convicted felon and reckless conduct, both of which were nolle prossed by the State before trial.

[2] See *McGhee v. State*, 263 Ga. App. 762 (1) (589 SE2d 333) (2003).

[3] (Punctuation omitted.) Id.

Department that Davis had repeatedly approached him seeking to purchase cocaine. Thomas instructed Colon to agree to obtain cocaine for Davis, and Davis subsequently met with Colon at the automobile body shop where Colon worked.

Colon told the officer that Davis wanted to purchase five kilograms of cocaine, followed by another ten kilograms if the first transaction "went well." Although the initial cost was to be $19,500 per kilogram, Colon and Davis subsequently agreed on a price of $18,500 per kilogram. At the conclusion of the meeting, Davis stated that he would "be back in touch with [Colon]."

Several days later, Colon informed the police that Davis was prepared to purchase three kilograms of cocaine. A few days later, Thomas learned that Davis was en route to Colon's business to discuss the transaction. Officers established surveillance in the area around the business and placed a transmitting device on Colon so that they could monitor his conversation with Davis. When Davis arrived, he and Colon met and discussed the possibility of purchasing cocaine. Thomas recorded the conversation using the transmitting device, and that recording was played for the jury.

After the meeting, Colon told Thomas that Davis was ready to purchase three kilograms of cocaine for a price of $18,500 per kilogram. Colon further stated that the purchase would occur at Davis's residence later that day. Officers again placed a transmitting device on Colon and instructed him to give the surveillance officers "a visual and a verbal signal that the money was there and that the deal was prepared to go." Thomas observed Colon meet with Davis at Davis's place of business, and the police then followed them to Davis's residence where both were seen entering the house. Although the recording obtained from the transmitting device attached to Colon was "fairly vague," Thomas observed Colon give the visual signal that the money was present, and he left the house on the pretense of getting the cocaine from his supplier. Once Colon left the house, officers immediately entered Davis's residence and executed a search warrant. Authorities arrested several individuals in the house, including Davis, and discovered over $65,000 in cash, as well as two guns.

Davis testified at trial and denied any involvement in drug trafficking. According to Davis, he went to the automobile body shop to speak with Colon about automobile repairs. He further testified that the recorded conversation with Colon — during which neither party used the words "drug," "cocaine," or "kilo" — involved the purchase of fake Nike shoes for a shoe store he owned.

1. Before trial, Davis moved to dismiss the indictment, asserting that it failed to allege a crime. The trial court denied the motion, and Davis challenges this ruling in several enumerations of error.

Under OCGA § 17-7-54 (a), "[e]very indictment of the grand jury which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." An indictment is not subject to dismissal "unless there is a defect so extreme that the defendant can admit the charge as made and still be innocent."[4] The issue is

not whether [the indictment] could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. It is useful to remember that the purpose of the indictment is to allow defendant to prepare his defense intelligently and to protect him from double jeopardy.[5]

The indictment in this case charged as follows:

In the name and behalf of the citizens of Georgia, [the Grand Jurors] charge and accuse SEAN V. DAVIS with the offense of CRIMINAL ATTEMPT TO TRAFFICK IN COCAINE for that the said SEAN V. DAVIS in the County and State aforesaid, on the 10th day of August, in the Year of Our Lord Two Thousand, did with intent to commit an offense defined in the Georgia Controlled Substances Act, to wit: Traffick in Cocaine, perform an act to wit:

*Substantial Step #1*: On August 3, 2000, Sean Davis met with a confidential informant . . . and discussed buying five kilos of cocaine in an initial purchase and ten kilos of cocaine a few days later. Sean Davis offered to pay $18,500 per kilo.

*Substantial Step #2*: On August 10, 2000, Sean Davis called [the confidential informant] and wanted to meet to purchase three kilos of cocaine. Sean Davis led [the confidential informant] to a residence at 110 Sagamore Court, Fayetteville, Fayette County, Georgia, where [the confidential informant] was shown a bag containing a large amount

---

[4] (Punctuation omitted.) *Bradford v. State*, 266 Ga. App. 198, 199 (1) (596 SE2d 715) (2004).
[5] (Punctuation omitted.) *Coalson v. State*, 251 Ga. App. 761, 764 (2) (555 SE2d 128) (2001).

of cash in the presence of Bernard Clark and Hope Jordan, said cash to be used to purchase cocaine, . . . said acts constituting substantial steps toward the commission of said offense, contrary to the laws of said State, the good order, peace and dignity thereof.

Despite the indictment's detailed explanation of how he committed the alleged offense, Davis claims that the language was insufficient because it did not allege the purity of the cocaine at issue. None of the cases Davis cites, however, imposes a requirement that the indictment allege the purity of the cocaine, and the applicable statutory language does not support his argument.

A person commits criminal attempt "when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."[6] The "specific crime" at issue here is trafficking in cocaine, which is defined by OCGA § 16-13-31. Under subsection (a) (1), any person "who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . in violation of this article commits the felony offense of trafficking in cocaine." This subsection thus defines two methods of trafficking in cocaine, but in either,

the crime of trafficking in cocaine is based on proof of the amount of cocaine involved. Under the statute, one may be guilty by possessing 28 or more grams of pure cocaine, or by possessing 28 or more grams of a mixture with a purity of 10 percent or more of cocaine.[7]

This case, however, does not involve a mixture of cocaine. The indictment clearly charged that Davis *attempted* to purchase three kilograms of cocaine, not that he completed the crime.[8] There is no requirement that the State specifically place the adjective "pure" before the word "cocaine" in the indictment, particularly given that the operative statute does not use such wording.[9] Indeed, there was

---

[6] OCGA § 16-4-1.

[7] (Citations omitted.) *Byers v. State*, 204 Ga. App. 552, 554-555 (3) (420 SE2d 23) (1992).

[8] One kilogram equals 1,000 grams. Thus, three kilograms is well over 28 grams.

[9] See *Allison v. State*, 259 Ga. App. 775, 778-779 (2) (577 SE2d 845) (2003) (indictment charging defendant with conspiracy to commit trafficking in cocaine by agreeing "to take possession of more than 400 grams of cocaine" sufficiently alleged essential elements of the offense); *Guerrero v. State*, 198 Ga. App. 397, 398 (2) (401 SE2d 749) (1991) (indictment charging that "defendant did 'knowingly possess more than 400 grams of cocaine, a controlled substance, in violation of the Georgia Controlled Substances Act,' " sufficiently alleged essential elements

no actual cocaine involved, and we fail to see why the State should be required to allege the purity of nonexistent cocaine. The indictment tracks the applicable statutes in a manner that is easily understood, and it apprised Davis of both the crime and the manner in which it was alleged to have been committed. Moreover, if Davis admitted the allegations precisely as set forth in the indictment, he would be guilty of criminal attempt to traffic in cocaine.[10] Thus, the indictment is not defective, and the trial court did not err in refusing to dismiss it.

2. In a similar argument, Davis contends that the trial court erred in denying his motion for directed verdict because the State did not prove the purity of the cocaine that he intended to purchase. According to Davis, the State needed to present evidence "concerning whether the [cocaine to be sold by Colon] was expected to be pure cocaine or a mixture with at least [ten] percent purity."

Davis is mistaken in his belief that, in order to prove attempt, the State must also prove all elements of the underlying crime.[11] Attempt to commit a crime occurs when a person, with intent to commit a specific crime, performs any act which constitutes a substantial step toward that crime.[12] It is not necessary that the underlying crime actually be completed.[13] Thus, there is no merit to Davis's assertion that an essential element of the underlying offense — the purity of the cocaine allegedly involved — had to be established in order to convict him of attempt to commit trafficking in cocaine.

We have reached the same conclusion in response to a similar argument regarding conspiracy to commit trafficking in cocaine. Because proof of the elements of the crime of trafficking is not required for a conviction for conspiracy to commit cocaine trafficking, the level of the purity of the cocaine allegedly involved need not be established.[14] It follows, therefore, that the purity of cocaine need not be established to secure a conviction for attempt to traffic in cocaine.

Given the evidence presented, including testimony that Davis negotiated a deal to purchase and possess cocaine for $18,500 per kilogram, showed Colon the required funds, and had over $65,000 in

---

of trafficking in cocaine); OCGA § 16-13-31 (a) (1).

[10] See *Bradford,* supra.

[11] Indeed, it would eviscerate the purpose of delineating attempt as an offense if the State were required to prove all elements of the underlying crime.

[12] OCGA § 16-4-1.

[13] See *Durfee v. State,* 221 Ga. App. 211, 212 (2) (471 SE2d 32) (1996) (upholding conviction for attempted trafficking in cocaine when substance was "sham" cocaine, but defendant believed it to be real).

[14] See *Hendricks v. State,* 277 Ga. 61, 62 (2) (586 SE2d 317) (2003); *Gumbs v. State,* 258 Ga. App. 230, 231 (1) (573 SE2d 485) (2002).

his house when Colon arrived to consummate the sale, the jury was authorized to find him guilty beyond a reasonable doubt of attempted trafficking in cocaine.[15]

3. Next, Davis claims that the trial court improperly instructed the jury when it defined "trafficking in cocaine." The court gave the following pattern charge, entitled "Trafficking Cocaine (mixture not alleged or proved)":

> [a]ny person who knowingly sells, delivers or brings into this State, or who is knowingly in possession of four hundred grams or more of cocaine, commits the offense of trafficking in cocaine. Weight is calculated by multiplying the percentage of cocaine, if proved, times the total weight of the substance. The State has the burden of proving weight, as with all other elements of the offense.[16]

Focusing again on the purity issue, Davis argues that "there was no evidence of purity and nothing to which the jury could connect or apply this charge." According to Davis, the court should have instructed the jury that purity was an essential element of the crime. However, as discussed in Division 2, supra, purity is not an essential element of criminal attempt to traffic in cocaine.

That portion of the charge concerning the method for calculating the weight of the cocaine, read alone, may not have been as clear and concise as could be desired. However, the critical inquiry is whether the trial court's charge, as a whole, substantially presented the issues in such a way as was not likely to confuse the jury.[17] Here, the jury was informed that this was an attempt case and was properly instructed as to the elements of attempted trafficking. Thus, the trial court's instructions, viewed as a whole, were not likely to confuse or mislead the jury, and we find no merit in this enumeration.[18]

4. Davis also challenges his sentence,[19] asserting that the "State's failure to prove or present evidence concerning any amount of pure cocaine or mixture of at least [ten] percent purity precludes the imposition of any sentence under the trafficking statute." As discussed in Divisions 1 and 2, supra, however, the State's evidence —

---

[15] See *Moon v. State*, 252 Ga. App. 796, 797 (1) (b) (557 SE2d 442) (2001).

[16] Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.30.32.

[17] See *Phillips v. State*, 278 Ga. App. 198, 204 (3) (628 SE2d 631) (2006).

[18] Id.

[19] Pursuant to OCGA § 16-13-33, "[a]ny person who attempts or conspires to commit any offense defined in this article shall be, upon conviction thereof, punished by imprisonment not exceeding the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

construed favorably to the verdict — establishes that Davis *attempted* to purchase and possess three kilograms of cocaine, not that he actually made such purchase. Such proof brings Davis within the cocaine trafficking statute and the penalty provisions of OCGA § 16-13-31 (a) (1) (C).

5. In his next enumeration of error, Davis argues that the trial court erred in denying his motion to suppress evidence seized during the execution of the search warrant at his home. The record shows that Agent Alicia Batts of the Fayette County Narcotics Task Force executed an affidavit in support of the search warrant application. The affidavit referenced information provided by the "confidential reliable informant," Vicente Colon, but failed to indicate that Colon was hoping to receive a sentence reduction for his federal drug charges by cooperating with the police.[20] When questioned at the hearing on Davis's motion to suppress, Batts could not recall whether she told the magistrate about Colon's criminal charges at the time she obtained the warrant.

Davis claims that the warrant lacked probable cause because the State failed to inform the issuing magistrate about matters relating to Colon's credibility — specifically, Colon's criminal history and his motivation to provide information to authorities — and that there was insufficient independent corroboration of criminal activity to find that probable caused existed. We disagree.

We will uphold a trial court's factual findings regarding probable cause unless clearly erroneous, and we will give substantial deference to a magistrate's decision to issue a search warrant after finding probable cause.[21] In determining whether probable cause exists, a magistrate's task

> is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.[22]

For the magistrate to make a fully informed reliability determination, officers seeking warrants "should provide the magistrate with any information they have relevant to an informant's reliability or

---

[20] The affidavit did not refer to Colon by name.

[21] See *Gordon v. State*, 248 Ga. App. 776, 777-778 (546 SE2d 925) (2001).

[22] (Punctuation omitted.) *DeYoung v. State*, 268 Ga. 780, 787 (7) (493 SE2d 157) (1997).

motivation, including matters such as criminal records and payments made to the informant."[23]

Here, although it is not clear whether the omission was intentional, Thomas was aware of Colon's criminal history and such information should have been provided to the magistrate.[24] However, because the omission of Colon's criminal record was offset by independent corroboration of criminal activity, reversal is not required.[25] The information contained in the affidavit provided a reasonable basis for the magistrate to conclude that Colon's credibility and reliability had already been corroborated. The affidavit detailed the authorities' visual and auditory surveillance of the discussions between Colon and Davis regarding the planned cocaine purchase.[26] Moreover, the police intentionally waited to get the warrant signed until after Colon confirmed that Davis had the money available for the drug transaction, and Batts specifically advised the magistrate of this evidence. Accordingly, the magistrate had sufficient information to establish probable cause, and the trial court did not err in denying Davis's motion to suppress.[27]

6. Davis claims that he was prejudiced and denied a fair trial when Colon referred to him as a "drug dealer" during direct examination. Pretermitting any error, Davis failed to properly preserve this issue for appeal. Although Davis objected to Colon's statement and the trial court sustained the objection, Davis did not ask for curative instructions, a mistrial, or any further relief. Consequently, he has waived this claim of error for purposes of appeal.[28]

7. Finally, Davis argues that the trial court improperly permitted Thomas to testify about hearsay statements made by Colon. Thomas

---

[23] *Robertson v. State*, 236 Ga. App. 68, 70 (510 SE2d 914) (1999).

[24] See id.

[25] See id.; *Brown v. State*, 244 Ga. App. 440, 441-442 (1) (535 SE2d 785) (2000) ("If any omissions on the part of the officer are offset by independent corroboration of criminal activity, then the magistrate may still have sufficient information to find that probable cause exists.").

[26] Davis also complains that the police failed to advise the magistrate that the surveillance tape did not contain the words "cocaine, kilo or drugs." At trial, Davis testified that his discussions and meetings with Colon involved the purchase of knock-off shoes – not cocaine. There is no evidence, however, that the police officers were aware of this assertion. Instead, Colon – who had previously served as an informant in at least three previous drug seizures – approached Thomas and specifically advised him that Davis wished to purchase cocaine. And, although the taped conversations do not contain the terms "cocaine, kilo, or drugs," they were consistent with a proposed drug transaction. Further, although Thomas conceded at the suppression hearing that the tapes did not specifically reference cocaine, there is no evidence that Thomas or the other police officers had any reason to believe the conversations were not about cocaine when they prepared and sought the search warrant.

[27] See *Gordon*, supra at 778-779; *Brown*, supra at 442.

[28] See *Miller v. State*, 275 Ga. 730, 739-740 (7) (571 SE2d 788) (2002); *Price v. State*, 204 Ga. App. 288, 288-289 (1) (419 SE2d 126) (1992); *Johnson v. State*, 198 Ga. App. 520, 521 (6) (402 SE2d 115) (1991).

testified extensively about Colon's statements to him, and clearly such statements fall within the definition of hearsay.[29] However, the admission of Thomas's testimony did not constitute error. As we have previously held, the

> primary flaw of hearsay testimony is the lack of opportunity for the declarant to be cross-examined as to honesty, truthfulness, perception, and memory. Thus, even our Supreme Court has noted that the modern trend regarding hearsay evidence is to allow the out-of-court declaration where the declarant is present and may be cross-examined. As long as the declarant testifies at trial and is available for cross-examination by the defendant, the purpose behind the hearsay rule is satisfied with regard to his declarations.[30]

Here, the record shows that both Thomas and Colon testified at trial, and both were subject to a full cross-examination by Davis's counsel. Thus, under these circumstances, we find that the trial court did not err in admitting the statements.[31]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 15, 2006 —
RECONSIDERATION DENIED OCTOBER 13, 2006 —

*Axam & Adams, Tony L. Axam,* for appellant.
*Scott L. Ballard, District Attorney, Cindy L. Spindler, Assistant District Attorney,* for appellee.

---

[29] See *Armstead v. State*, 255 Ga. App. 385, 389 (3) (565 SE2d 579) (2002).
[30] *Conley v. State*, 257 Ga. App. 563, 564 (1) (571 SE2d 554) (2002).
[31] See id.