## A07A0573. BRANAN v. THE STATE.
(647 SE2d 606)

RUFFIN, Judge.

A jury found Henry Branan guilty of five counts of theft by taking and six counts of violating the Georgia Securities Act of 1973.[1] On appeal, Branan contends that the trial court erred in denying his motion for an appeal bond and in failing to merge the theft counts and the securities violations. He also argues that there was insufficient evidence to support his securities violation convictions because there was no evidence that he sold securities. Finally, he alleges that he received ineffective assistance of counsel. For reasons that follow, we affirm.

On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict.[2] We do not weigh the evidence or determine witness credibility, but only determine whether the evidence was sufficient to enable a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.[3] So viewed, the evidence shows that Branan met Jim Lenhart in October 1999 and informed him that he was looking for investors for his business, Yacht America Marinas, which developed marinas with boat slips and storage racks. At a meeting shortly thereafter, Branan asked Lenhart to invest in Yacht America by purchasing a $14,000 dock for an initial payment of $3,000, with the option to sell 13 months later for $20,000. On November 8, 1999, Lenhart agreed to buy two existing boat docks at the Snapper Marina in Hernando Beach, Florida, for $3,000 each, and gave Branan a check for $6,000. Lenhart signed a second agreement on December 28, 1999 for two more boat slips at the Snapper Marina, and gave Branan a check for $5,000. On April 4, 2000, Lenhart paid Branan $1,000 for two existing boat slips at what Branan alleged was the York River Marina in Hayes, Virginia.

Lenhart introduced Branan to Rockie Miller and Peter Hopkinson, to whom Branan made a similar investment proposal. After reviewing promotional materials for Yacht America, Miller signed an agreement on December 30, 1999 to purchase a boat storage rack at

---

[1] OCGA § 10-5-12 et seq.

[2] See *Davis v. State*, 281 Ga. App. 855 (637 SE2d 431) (2006).

[3] See id.

Snapper Marina and gave Branan $3,000. On the same day, Hopkinson signed an agreement for the purchase of an existing boat storage rack at Snapper Marina and subsequently gave Branan a check for $3,000.

Although Lenhart, Miller, and Hopkinson attempted to exercise their resale options after a year and demanded their money, Branan failed to comply with the agreements and the victims never received returns on their investments.[4] At trial, the State introduced evidence that although Branan discussed purchasing boat storage racks or slips with the marina owners, the sales were not consummated, and Branan never owned slips or racks at Snapper Marina or the purported York River Marina.

The chief investment attorney for the Secretary of State's office, which oversees enforcement of the Securities Act, testified that neither Yacht America Marinas nor Branan were registered to sell securities in Georgia. An investigative accountant for the Secretary of State's office testified that money flowing into and out of a bank account Branan used for Yacht America Marinas fit the pattern for a "Ponzi scheme," in which no legitimate business exists and, instead, money taken from new investors is used to pay off previous investors.

The Secretary of State's office had previously investigated Branan, resulting in a February 11, 1994 order signed by the Georgia Commissioner of Securities requiring Branan and Yacht America Marinas to cease and desist "all offers for [the] sale and sales of securities in the State of Georgia that are being sold in violation of the Georgia Securities Act of 1973." The previous investigation also resulted in Branan's guilty plea to violating the Georgia Securities Act and theft by taking. Based upon evidence presented, the jury found Branan guilty of five counts of theft by taking and six counts of violating the Georgia Securities Act. After his conviction, Branan sought an appeal bond, which the trial court denied.

1. On appeal, Branan alleges that the trial court erred in denying his motion for an appeal bond. We disagree. The decision whether to grant or deny an appeal bond following a felony conviction lies within the discretion of the trial court, and we will uphold the trial court's determination absent flagrant abuse of such discretion.[5] In determining whether to allow an appeal bond, a trial court should consider whether there is a substantial risk that the defendant will flee, pose a danger to individuals or to the community, or interfere with the

---

[4] After he was indicted, Branan refunded a portion of Lenhart, Miller, and Hopkinson's initial investments.

[5] See *Watts v. Grimes*, 224 Ga. 227 (161 SE2d 286) (1968).

administration of justice, including intimidating witnesses, and whether the appeal was frivolous or intended solely for delay.[6]

At the hearing on the motion for an appeal bond, the State presented evidence that Branan — who was facing a ten-year prison sentence — had a valid passport and had traveled to the Bahamas and the Dominican Republic between indictment and the trial. Branan admitted that he had continued the operation of his website for Yacht America Marinas during his trial. And Branan had previously pled guilty to violations of the Georgia Securities Act and theft, and had been directed to cease and desist offering securities for sale in Georgia.

Following the hearing, the trial court denied Branan's motion, concluding that there was "a significant risk that Defendant would not appear for appellate proceedings and that Defendant would engage in criminal activity." Given the evidence presented at trial and at the motion hearing, we cannot say that the trial court abused its discretion in denying Branan's request for an appeal bond.[7]

2. Branan contends that the trial court erred in sentencing him on both the theft counts and the securities violations because the crimes merged. This argument is without merit.

(a) We first address legal merger. " 'The substantive aspect of double jeopardy precludes multiple convictions or punishments for crimes arising from the same criminal conduct.' "[8] In determining whether double jeopardy precludes Branan's convictions for the securities violations and the theft counts, we must determine the intent of the legislature, looking first to the statutory language.[9] Judicial construction is not necessary where the statute's language is plain and unambiguous.[10] OCGA § 16-8-2 provides that a person commits theft by taking "when he unlawfully takes . . . any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken." OCGA § 10-5-12 (a) (1) prohibits the sale of securities by a person who is not legally registered to do so. The statute also makes it unlawful to sell unregistered securities.[11] Thus, based upon the plain language of the

---

[6] See *Birge v. State*, 238 Ga. 88, 89 (230 SE2d 895) (1976).

[7] See *Williford v. State*, 218 Ga. App. 522, 524 (462 SE2d 632) (1995).

[8] *Taylor v. State*, 238 Ga. App. 753, 754 (2) (520 SE2d 267) (1999).

[9] See id.; *Tabb v. State*, 250 Ga. 317, 318 (1) (297 SE2d 227) (1982).

[10] See *Taylor*, supra.

[11] See OCGA § 10-5-12 (a) (1).

statutes, we conclude that violation of OCGA § 10-5-12 (a) (1) and theft by taking are separate offenses as a matter of law.[12]

Branan also alleges that his theft by taking convictions legally merge with his convictions for violation of OCGA § 10-5-12 (a) (2) (C), which deems it unlawful "for any person[,] . . . [i]n connection with an offer to sell, sale, offer to purchase, or purchase of any security, directly or indirectly[,] . . . [t]o engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon a person." The gravamen of the offense of theft by taking "is the taking of the property of another against the will of such other."[13] In contrast, the prohibited act under OCGA § 10-5-12 (a) (2) (C) is the intent to defraud; the crime does not require that the victim sustain a loss.[14] Thus, because proof of theft by taking contains an element not contained in the offense of violation of OCGA § 10-5-12 (a) (2) (C), the offenses cannot merge as a matter of law.[15]

(b) Branan also maintains that his convictions for securities violations and theft by taking factually merged. "[T]wo offenses will merge as a matter of fact if one of them is established by proof of the same or less than all the facts required to prove the other."[16] The key question is "whether the State 'used up' its evidence in proving the crime: [t]he actual evidence test, in effect, means that if the [S]tate uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact."[17]

As discussed in Division 2 (a), the theft charges and the securities violations each require proof of facts not required by the other. The theft charges required proof of takings, while the violations of the Securities Act did not.[18] And the securities violations charges required proof of a fraudulent statement, that Branan was not registered to sell securities, and that the securities sold were not registered; the theft by taking charges required no such proof.[19] Thus, because the State had to prove separate facts to find Branan guilty of

[12] See *Jaheni v. State*, 285 Ga. App. 266, 270 (2) (b) (645 SE2d 735) (2007) (charges that "involve different proscribed conduct" and have "distinctive elements" do not merge as a matter of law).

[13] *Stull v. State*, 230 Ga. 99, 100 (1) (196 SE2d 7) (1973); see OCGA § 16-8-2.

[14] See *Curtis v. State*, 99 Ga. App. 732, 736-737 (1) (109 SE2d 868) (1959) (decided under previous Code section).

[15] See *Barber v. State*, 283 Ga. App. 129, 130-131 (3) (640 SE2d 696) (2006).

[16] *Keown v. State*, 275 Ga. App. 166, 169 (2) (620 SE2d 428) (2005).

[17] Id.

[18] See OCGA §§ 16-8-2, 10-5-12 (a) (1) and (a) (2) (C); *Curtis*, supra.

[19] See OCGA §§ 16-8-2, 10-5-12 (a) (1) and (a) (2) (C).

the theft by taking offenses and the violations of the Georgia Securities Act, the crimes do not merge as a matter of fact.[20]

3. Branan maintains that his convictions for violations of the Georgia Securities Act must be reversed because his agreements with the victims in this case were not securities. The test set forth by our Supreme Court provides that "[i]n order for a transaction to constitute a securities transaction under the law, there must be an investment, a reasonable expectation of profits, and a reliance on the management of another party to bring about the profits."[21] A court should consider "the characteristics of the instrument and the underlying economic reality" in determining whether an instrument is a security.[22] Here, the evidence showed that the agreements between Branan and the victims "represented investments and that the investors relied upon [Branan] to manage these investments for them and to provide a return on their investment."[23] Accordingly, the evidence was sufficient to establish that the agreement between Branan and the victims constituted securities under Georgia law.[24]

4. Branan also alleges that trial counsel's failure to contact and interview certain witnesses constituted ineffective assistance of counsel. To prevail on this claim Branan must show "that counsel's performance was deficient and that the deficient performance so prejudiced [Branan] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[25] Here, because Branan failed to call the witnesses at the new trial hearing or otherwise prove what their testimony at trial might have been, he cannot show that trial counsel's failure to contact, interview, or subpoena them would have changed the outcome of the trial.[26] Accordingly, Branan has not established that he received ineffective assistance of counsel.[27]

5. Finally, in a single paragraph in his brief in which he simply states the standard of review set forth in *Jackson v. Virginia*,[28]

---

[20] See *Morris v. State*, 274 Ga. App. 41, 43 (2) (616 SE2d 829) (2005); *Robinson v. State*, 246 Ga. App. 576, 583 (8) (541 SE2d 660) (2000); *Reeves v. State*, 233 Ga. App. 802, 805 (2) (505 SE2d 540) (1998).

[21] *Tech Resources v. Estate of Hubbard*, 246 Ga. 583, 585 (272 SE2d 314) (1980).

[22] (Punctuation omitted.) *Rasch v. State*, 260 Ga. App. 379, 383-384 (1) (579 SE2d 817) (2003).

[23] Id. at 385.

[24] See id.; *Mosley v. State*, 253 Ga. App. 710, 712 (1) (560 SE2d 305) (2002) (evidence sufficient to establish securities where victims made investments by which they expected to profit by relying on the management of others).

[25] *Todd v. State*, 275 Ga. App. 459, 463 (4) (620 SE2d 666) (2005).

[26] See id.; *Jividen v. State*, 256 Ga. App. 642, 644-645 (1) (a) (569 SE2d 589) (2002).

[27] See *Brown v. State*, 285 Ga. App. 453 (3) (646 SE2d 289) (2007); *Todd*, supra; *Jividen*, supra.

[28] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Branan challenges the sufficiency of the evidence. He does not, however, enumerate as error the insufficiency of the evidence. Therefore, we cannot consider this argument.[29]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED JUNE 6, 2007.

*Richard D. Wilson*, for appellant.

*Thurbert E. Baker, Attorney General, Kimberly L. Schwartz, Assistant Attorney General, Patrick H. Head, District Attorney*, for appellee.

---

[29] See OCGA § 5-6-40; *Dole v. State*, 256 Ga. App. 146, 148 (2) (567 SE2d 756) (2002) (appellate jurisdiction limited to consideration of legal grounds enumerated as error).