A10A1733. URSULITA v. THE STATE.
(706 SE2d 123)

ANDREWS, Judge.

Yissel Ursulita appeals after a jury found her guilty of first degree arson and burglary. After reviewing the record, we find no error and affirm.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61

---

LE2d 560) (1979).

So viewed, the evidence at trial was that when police arrived at the victim's apartment, they found a weight bench that had been slashed, a smoke detector that was ripped out of the ceiling, a damaged Xbox game system, a television that had been put in the bathtub, slashed air mattresses, slashed drywall with chunks missing, and writing on the walls. Officers also found personal papers and clothing that had been put in the oven and set on fire.

An investigator with the fire department testified that there had been a fire started in the oven and, although it was extinguished in its early stages, there was visible smoke damage in the kitchen, den and dining area. The investigator stated that, had the fire not been put out, it could have burned the rest of the apartment.

The officer who initially responded to the call that a burglary had taken place said he talked to the victim Albert Ontivelos, the owner of the apartment, who told him that Ursulita could be responsible for the damage. When the officer and victim were standing in the apartment parking lot, Ursulita drove through the lot at a high rate of speed. The officer stopped Ursulita who admitted to being at the apartment complex earlier in the day, and said she had just recently broken off a relationship with Ontivelos. The officer noticed that Ursulita had a burn mark on her arm and a cut on her finger.

Ursulita was taken into custody and, in her statement to police, admitted causing the damage in Ontivelos's apartment. Ursulita said she had been living with Ontivelos in his apartment but had moved out a few weeks earlier when Ontivelos ended the relationship. Ursulita said that she went to Ontivelos's apartment the night before, but her keys did not work in the lock. The next day she went back to the apartment, noticed that the patio door was ajar and went in through that door. Ursulita said she was very upset after she learned that Ontivelos had another girlfriend and when she went into the apartment, she pulled out the smoke alarm, put various items in the oven, poured alcohol on them and set them on fire.

The jury found Ursulita guilty of the arson and burglary charges and not guilty of criminal damage to property in the second degree. This appeal followed.

1. Ursulita argues that her motion for directed verdict should have been granted as to the burglary charge because there was no evidence that she did not have permission to be in the apartment.

The burglary statute, OCGA § 16-7-1 (a) provides in pertinent part: "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters . . . the dwelling house of another."

Contrary to Ursulita's argument, there was sufficient evidence

from which the jury could conclude that Ursulita entered the apartment without permission. Although Ontivelos did not testify at trial, the evidence was that he had changed the locks after Ursulita moved out and she could no longer use her keys. On the day of the burglary and fire, Ursulita again attempted unsuccessfully to use her keys and then went around to the patio, climbed over the railing around the patio, and went, uninvited, into the apartment through the patio door.

Circumstantial evidence can suffice to prove lack of authority for purposes of the burglary statute. *Jones v. State*, 258 Ga. 25, 27 (1) (365 SE2d 263) (1988). Further, in a similar case, this Court found that, when the victim gave the defendant a key to her condominium unit, but later changed the lock and did not give the defendant a new key, the authority to enter her condominium had been withdrawn. *Hug v. State*, 205 Ga. App. 746, 747 (2) (423 SE2d 700) (1992).

Here, Ursulita, by her own evidence, demonstrated that she had no authority to enter the apartment. See *Hug*, supra. See also *Bryant v. State*, 282 Ga. 631, 634 (2) (651 SE2d 718) (2007) (testimony that victim had refused to give defendant a new key to her home and reasonable inference that defendant intruded on victim's privacy sufficient to show lack of authority to enter); *Bearfield v. State*, 305 Ga. App. 37, 40 (699 SE2d 363) (2010) (defendant's unauthorized use of code to enter former employer's facility after it was closed sufficient to show that defendant was without authority to enter).

2. Ursulita also argues that the trial court erred in denying her motion for directed verdict on the arson charge. OCGA § 16-7-60 (a) (5) provides:

> A person commits the offense of arson in the first degree when, by means of fire or explosive, he or she knowingly damages or knowingly causes, aids, abets, advises, encourages, hires, counsels, or procures another to damage: Any building, vehicle, railroad car, watercraft, aircraft, or other structure under such circumstances that it is reasonably foreseeable that human life might be endangered.

Ursulita contends that the State did not show that she intended to damage the building nor did it show that it was reasonably foreseeable that human life would be endangered as a result of the fire in the oven. This is incorrect.

There was evidence at trial that Ursulita had ripped out the smoke detector and poured alcohol on the items she put in the oven. The investigator from the fire department testified that the fire was discovered and put out at a very early stage. Had it been undiscov-

ered, he stated that he was reasonably sure that it would have escaped the oven, burned the apartment, and could have spread to the other apartments in the building. Another arson investigator testified that it was "absolutely" foreseeable that this fire could have endangered human life.

In addition, contrary to Ursulita's argument, there was sufficient evidence of "damage" to support the conviction. The evidence was that there was visible smoke damage on the walls. This was sufficient to constitute "damage" under OCGA § 16-7-60. See *Smith v. State*, 140 Ga. App. 200 (1) (230 SE2d 350) (1976) (causing smoke damage constitutes arson in the first degree if the other elements of the crime are present).

Another argument raised in this enumeration is that there was no showing that Ontivelos did not consent to the burning of his apartment. Ursulita was charged under OCGA § 16-7-60 (a) (5) which does not mention consent.

3. Ursulita contends that the trial court erred in allowing certain hearsay testimony at trial. Specifically, she argues that an arson investigator who was present when Officer Restrepo interviewed Ursulita in Spanish should not have been allowed to testify as to what Restrepo told him in English that Ursulita said to Restrepo in Spanish. Ursulita cites to no authority in support of this enumeration, and we find none. Even if Restrepo were not available to testify, under the "language conduit" rule,

> [a]bsent a motive to mislead, distort or some other indication of inaccuracy, when persons speaking different languages rely upon a translator as a conduit for their communication, the statements of the translator should be regarded as the statements of the persons themselves without creating an additional layer of hearsay.

(Punctuation omitted.) *Lopez v. State*, 281 Ga. App. 623, 625 (1) (636 SE2d 770) (2006). Moreover, in this case, Restrepo himself testified to the interview with Ursulita, and defense counsel, who did speak Spanish, had the opportunity to question Restrepo closely as to his translation of Ursulita's statements. Therefore there was no violation of the confrontation clause, and Ursulita can show no harm as a result of this claimed error. See *Davis v. State*, 281 Ga. App. 855, 863 (7) (637 SE2d 431) (2006) ("As long as the declarant testifies at trial and is available for cross-examination by the defendant, the purpose behind the hearsay rule is satisfied.").

4. Ursulita argues that she received ineffective assistance of counsel. "To establish ineffective assistance of counsel, [a defendant] must show that his counsel's performance was deficient and that the

deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984)[.]" *Gross v. State*, 262 Ga. 232, 233 (1) (416 SE2d 284) (1992). The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel. Id. Further, Ursulita must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct. *Snyder v. State*, 201 Ga. App. 66, 70 (8) (410 SE2d 173) (1991). A trial court's finding that a defendant has not been denied effective assistance of counsel will be affirmed unless clearly erroneous. *Warren v. State*, 197 Ga. App. 23, 24 (1) (397 SE2d 484) (1990).

Ursulita claims that counsel failed to object to the jury verdict after the jury found her guilty of burglary and not guilty of the underlying charge of criminal damage to property. Ursulita argues that the verdicts were inconsistent. "Georgia does not recognize an inconsistent verdict rule, which would permit a defendant to challenge the factual findings underlying a guilty verdict on one count as inconsistent with the findings underlying a not guilty verdict on a different count." *Hines v. State*, 276 Ga. 491, 492 (578 SE2d 868) (2003).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED FEBRUARY 8, 2011.

*Hernan, Taylor & Lee, Christopher C. Taylor, Jerome Lee*, for appellant.

*Daniel J. Porter, District Attorney, Stephen A. Fern, Assistant District Attorney*, for appellee.