**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**August 29, 2012**

# In the Court of Appeals of Georgia

A12A1392. GARRETT v. THE STATE.

MILLER, Judge.

Following a jury trial, Clinton Dean Garrett was convicted of burglary (OCGA § 16-7-1 (a)).[1] Garrett filed a motion for new trial, which the trial court denied. On appeal, Garrett contends that the evidence was insufficient to support his conviction. Discerning no error, we affirm.

On appeal from a criminal conviction, we view the evidence in a light most favorable to the prosecution to determine whether the evidence was sufficient to prove guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (III)

---

[1] This statute was substantially amended by Ga. L. 2012, Act 709, § 3-1, which did not go into effect until July 1, 2012, after the offense occurred in this case. Thus, this case is considered under the prior version of the statute. See Ga. L. 2012, Act 709, § 9-1 (a).

(B) (99 SC 2781, 61 LE2d 560) (1979); *Goss v. State*, 305 Ga. App. 497 (699 SE2d 819) (2010). "It is solely within the purview of the factfinder to weigh conflicting evidence and judge the credibility of the witnesses." (Footnote omitted.) *Benyard v. State*, 311 Ga. App. 127 (714 SE2d 746) (2011).

So viewed, the evidence shows that the victim owned ten chicken houses located in Franklin County, Georgia. Although the chicken houses had not been in use since February 2009, the victim still checked on them every day to look for leaks, listen for rats, turn on the lights, and confirm that nothing was missing. On April 12, 2010, the victim mowed the grass around the chicken houses. When the victim went to inspect the chicken houses the next day, he noticed tracks over the freshly cut grass, as well as an open front door to one of the chicken houses. Upon further inspection, the victim discovered that the copper wire had been cut and removed from the chicken house. The victim continued to inspect the other chicken houses and discovered that the copper wire had been cut and removed from three other houses, and that the wire had been cut, but not removed, from two other houses. The victim estimated that a total of 60,000 feet of copper wire had been removed from his chicken houses. The victim called the police and met with the sheriff regarding the

incident. Although the doors to the chicken houses were not locked, the victim had not given anyone permission to enter the houses.

On the evening of April 16, 2010, a captain with the Franklin County Sheriff's Department was assigned to continue surveillance of the victim's farm. As the captain neared the location, he observed three people running by a vacant house. The captain followed them on foot until he found Garrett siting in some bushes in a field that was less than a mile from the victim's farm. Garrett denied that he was one of the individuals who had been running and told the captain that he had been sitting in the bushes for the past hour because of an argument with his girlfriend. Garrett agreed to accompany the captain to Garrett's home and allowed the captain to search the home for other individuals. The captain located Jason Bray, who resided in the home along with Garrett.

Law enforcement began night-time surveillance of Garrett's home, at which time an officer observed buckets containing coil wiring. The officers later obtained receipts and invoices in Garrett's name from PayDay Recycling in Royston, Georgia – a facility that recycles scrap metal. These records established that Garrett had been paid five different times in April 2010 for various amounts and types of copper wire that he brought to the facility. One of those dates specifically included the day after

the burglary of the victim's chicken houses, when Garrett sold PayDay Recycling 483 pounds of copper wire.

At trial, Bray testified that he and Garrett worked together to steal copper wire from the victim's chicken houses.[2] Bray explained that after he and Garrett collected copper wire from the victim's chicken houses, they would dispose of it by taking it to PayDay Recycling. Bray further testified that Garrett also went by himself to steal wire from the victim's chicken houses. According to Bray, the last time both he and Garrett had stolen wire from the victim's chicken houses was four to five days before the police showed up at Garrett's home on April 16, 2010.

Garrett contends on appeal that the evidence was insufficient to sustain his burglary conviction. We disagree.

OCGA § 16-7-1 (a) (2010) proscribed, in relevant part, that

[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within . . . any building, . . . or enters or remains within any other building, . . . or any room or any part thereof.

(Punctuation omitted.) Moreover,

---

[2] At the time of Garrett's trial, Bray was serving time for the burglary of the victim's chicken houses.

[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. One is concerned in the commission of a crime where the person either directly commits, intentionally causes another to commit, intentionally aids or abets the commission of, or intentionally advises or otherwise encourages another to commit the crime.

(Citations and punctuation omitted.) *Sims v. State*, 306 Ga. App. 68, 70 (1) (701 SE2d 534) (2010).

Despite Bray's testimony regarding Garrett's participation in the chicken house burglary, Garrett contends that the evidence was insufficient to sustain his conviction because no evidence existed to corroborate Bray's testimony. It is true that

[a] defendant may not be convicted of a felony on the uncorroborated testimony of an accomplice. However, it is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict. The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it cannot be said, as a matter of law, that the verdict is contrary to the evidence.

(Citation omitted.) *Finley v. State*, 252 Ga. App. 66, 67-68 (2) (555 SE2d 523) (2001). Moreover, "the corroboration, which may include the defendant's conduct before and after the crime, need only connect and identify the defendant with the crime." (Citation and punctuation omitted.) *Sims*, supra, 306 Ga. App. at 70-71 (1).

Here, the evidence showed that Garrett was hiding in the bushes in a field near the victim's chicken houses; that Garrett resided with Bray; that Garrett made a sale of copper wire to PayDay Recycling the day after the burglary; and that buckets of coil wiring were present at Garrett's home after the burglary. This additional evidence more than satisfied the slight evidence requirement necessary to corroborate the testimony of Bray. Accordingly, the evidence was sufficient to authorize a rational jury to find Garrett guilty of burglary beyond a reasonable doubt.

*Judgment affirmed. Mikell, P. J., and Ray, J., concur.*