**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**January 17, 2013**

# In the Court of Appeals of Georgia

A12A1996. FLOYD v. THE STATE.

BOGGS, Judge.

William Floyd appeals, contending in his sole enumeration of error that insufficient evidence supports his burglary conviction. We disagree and affirm.

When reviewing the sufficiency of the evidence,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

(Citations omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the record shows that when a landlord entered a rental home from which he had recently evicted tenants, he observed that the water heater in the utility room was in good order. He removed locks from the doors and drove to a nearby home supply store to purchase replacements. Approximately 20-25 minutes later, he received a telephone call from a person who lived near the rental home informing him that a white or beige Tahoe was parked in its driveway. Within 15 minutes of receiving this telephone call, the landlord returned to the rental home and parked his truck behind the Tahoe in the driveway.

When the landlord entered the home, he noticed that the attic stairway was pulled down and called, "You guys have been evicted. Come on down. Get out of here." While he was looking up in the attic, Holly Gregory appeared in the hallway behind him, waving her arms. When he informed her that she should not be in the home, Gregory explained "our friend said we could come get some stuff out of the house." The landlord informed her that nothing remained in the house because it was in a pile beside the street.

As Gregory was waving her hands and talking, the landlord "saw from the side a figure with a red handle . . . scurrying out the back door." Fearing for his safety, he immediately left the home through the carport door, followed by the woman. While he was standing at the front of his truck, the man came "around the side of the house to where this woman was." He was no longer carrying the red-handled object. After telling them that "they had no business there," the landlord called 911 and gave the dispatcher a detailed description of the man and woman, as well as the Tahoe and its tag number. While the landlord was on the telephone with 911, the man and woman jumped in the Tahoe and drove "through the yard and out, not even on the driveway, just to get out of there."

A few minutes later, a police officer arrived. When the name Holly Gregory came up in a conversation between the landlord and a third party, the officer decided to drive to her father's house because he knew her from high school. When he arrived, he encountered Gregory and Floyd outside near a white SUV, placed them in handcuffs, and advised them of their *Miranda* rights. Both claimed that they had gone to the rental home to retrieve a refrigerator and a television for the former tenants. The police officer testified that the Tahoe was filled with too much junk and trash to move a refrigerator.

A search of the rental home revealed that the following damage had been done to the hot water heater during the time the landlord left for the home repair store: the top of the hot water heater had been cut off; pipes leading from the top of the hot water heater had been cut off; and hot water supply pipes in the wall had been torn out and cut off. Additionally, a red-handled bolt cutter was found behind bushes located near the door used by Floyd to exit the house.

The landlord identified Floyd as the man he encountered in the rental home both before and during trial. Following her guilty plea to burglary, Gregory testified at trial on behalf of the State. During her testimony, she was impeached with her prior statements that Floyd had gone into the home looking for copper wire and that he had cut copper wires in the home. She testified that she was friends with the tenants who had been evicted and admitted that she knew they were no longer allowed on the property at the time she and Floyd encountered the landlord. She denied that she and Floyd entered the house before encountering the landlord, claiming instead that they were in the backyard to retrieve a refrigerator. Both Gregory and the landlord testified that the landlord had not given Gregory and Floyd permission to enter the house that day.

Floyd contends that this evidence is insufficient to sustain his burglary conviction because the State presented insufficient evidence that (1) he entered the home without authority, and (2) he intended to commit theft. "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another." OCGA § 16-7-1 (a).

We conclude that the State presented sufficient evidence that Floyd entered the home without authority. The landlord testified that the tenants had been evicted, that all of their belongings had already been removed from inside the home, and that he had not given permission for Floyd and Gregory to enter the home. Floyd's claim on appeal that he was operating under a mistake of fact with regard to his authority to enter the home is not supported by the record. OCGA § 16-3-5 provides: "A person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by a misapprehension of fact which, if true, would have justified the act or omission." When asked at trial about what she told Floyd about the reasons for needing his help, Gregory replied, "I believe I said that [the tenants] had gotten evicted and that I needed to pick some stuff up. The sheriff had come and she was no longer allowed to be on the property, so she asked me to pick up some stuff." This

statement, if true, did not provide Floyd with legal authority to enter the home. See *Zabain v. State*, 315 Ga. App. 749, 751 (2) (728 SE2d 273) (2012) ("Without authority means without legal right or privilege or without permission of a person legally entitled to withhold the right"). Gregory did not have the legal right or privilege to grant permission for Floyd to enter the landlord's property based upon the request of an evicted tenant no longer allowed on the property.

The State also presented sufficient evidence of Floyd's intent to commit theft.

> Whether the defendant entertained an intent to commit a theft after entering is a matter for the jury to say, under the facts and circumstances proved. As a general rule the state must, of necessity, rely on circumstantial evidence in proving intent. And the fact that the defendant may have failed in accomplishing his apparent purpose does not render a finding of burglary improper.

(Citation and punctuation omitted.) *Nelson v. State*, 277 Ga. App. 92, 95 (1) (a) (625 SE2d 465) (2005). In this case, the following evidence sufficiently supports the conclusion that Floyd intended to commit theft: the hot water heater and pipes were damaged less than an hour before the landlord saw Floyd exit the rental home through a back door while carrying an object with a red handle; Floyd was not carrying the red-handled object when the landlord saw him come around the side of the house; a

6

red-handled bolt cutter was found underneath bushes near the door where Floyd exited the home; there were no personal possessions of the former tenants located inside the home; Gregory and Floyd fled when the landlord called 911; and Gregory told the police that she and Floyd had gone to the home looking for copper wire and that Floyd had cut wire in the home. See *Snow v. State*, 318 Ga. App. 131, 131-133 (1) (733 SE2d 428) (2012); *Wilcox v. State*, 310 Ga. App. 382, 384-385 (713 SE2d 468) (2011).

Because the State presented sufficient evidence to support Floyd's burglary conviction, we affirm.

*Judgment affirmed. Doyle, P. J. and Andrews, P. J., concur.*