**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**June 4, 2013**

# In the Court of Appeals of Georgia

A13A0340. HARRIS v. THE STATE.

BRANCH, Judge.

Walter Eugene Harris was indicted, tried by jury, and convicted of burglarizing Tubman Middle School in Richmond County and sentenced as a recidivist to serve 20 years. Following the denial of his motion for new trial, Harris appeals. He argues that the State failed to present evidence that he was in the school without authority or that he had the appropriate criminal intent. We affirm.

Construed in favor of the verdict, the evidence shows that at about 9:40 p.m. on March 6, 2009, someone used a large piece of concrete to break a window in a door on the side of the school gymnasium, which activated an alarm that eventually led police to respond. Blood was found on the inside of the door and a trail of blood led to the parking lot; it appeared that the perpetrator had cut himself on the broken glass

while reaching through the window in an effort to enter the building. DNA samples taken voluntarily from Harris matched the blood found at the scene. The principal of the school at the time testified that there was no damage to the main school building, which is separated from the gymnasium by a 15 to 20 foot breezeway, and nothing was missing from the gymnasium or the school. At the time of the incident, computers were located in the media center in the main school building, the door to which was located about 15 to 20 feet away from the gymnasium. Harris was not an employee of the school or a parent of a student. Harris did not present any evidence or testify.

Harris contends that the verdict was "contrary to the evidence," "contrary to the law and the principles of justice," and "strongly against the weight of the evidence." These arguments ask this court to grant a new trial based on the general grounds set forth in OCGA §§ 5-5-20[1] and 5-5-21.[2] But these arguments are solely addressed to the discretion of the trial court:

---

[1] OCGA § 5-5-20 provides as follows: "In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury."

[2] OCGA § 5-5-21 provides as follows: "The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."

2

A motion for new trial based on OCGA § 5-5-20, i.e., that the verdict is contrary to the evidence, addresses itself only to the discretion of the trial judge. Whether to grant a new trial based on OCGA § 5-5-21, i.e., that the verdict is strongly against the evidence, is one that is solely in the discretion of the trial court, and the appellate courts do not have the same discretion to order new trials.

(Citations omitted.) *Smith v. State*, 292 Ga. 316, 317 (1) (b) (737 SE2d 677) (2013). See also *Kendrick v. Kendrick*, 218 Ga. 460 (1) (128 SE2d 496) (1962) (the argument that the verdict is contrary to "the principles of justice and equity" is also solely in the discretion of the trial court) (citations omitted), superseded by statute on other grounds. *Ga. Power Co. v. Slappey*, 121 Ga. App. 534, 536 (3) (174 SE2d 361) (1970); *Rowland v. State*, 228 Ga. App. 66, 68 (2) (491 SE2d 119) (1997) (same). Instead, when an appellant asks this court to review either a lower court's refusal to grant a new trial or its refusal to grant a motion for a directed verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

To prove that Harris committed the crime of burglary, the State was required to present sufficient evidence to show that Harris entered or remained in the school "without authority and with the intent to commit a felony or theft therein." OCGA § 16-7-1 (b). See also *Lloyd v. State*, 168 Ga. App. 5 (308 SE2d 25) (1983) (same). Harris's blood was found on the interior of the door, and he does not challenge the sufficiency of the evidence that he entered the school.

(a) Harris contends the State failed to present evidence to show that his entry into the school occurred without authority. The State may prove lack of authority to enter with circumstantial evidence. *Ursulita v. State*, 307 Ga. App. 735, 737 (1) (706 SE2d 123) (2011); *Jones v. State*, 258 Ga. 25, 27 (1) (365 SE2d 263) (1988). Here, the State presented evidence to show that the building had an alarm that was set for the night; Harris entered by breaking a window and setting off the alarm; Harris was not an employee or parent of a student at the school; and Harris fled after setting off the alarm. These facts provide circumstantial evidence to show that Harris lacked authority to enter the school. See, e.g., *Lloyd*, supra (evidence that a door had been pried open was sufficient to show defendant's lack of authority to enter building).

(b) Harris also contends there is no proof of his intent to commit burglary. But intent to commit burglary may be proved by circumstantial evidence. *Nelson v. State*,

277 Ga. App. 92, 95 (1) (a) (625 SE2d 465) (2005). And "[i]ntent may be found by the jury upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is being prosecuted." (Footnote omitted.) *Palmer v. State*, 243 Ga. App. 656, 657 (533 SE2d 802) (2000).

More specifically, Harris cites the principle that an inference of intent to steal is raised "where evidence shows an unlawful entry into a building where valuable goods are stored inside and no other motive is apparent." *Tate v. State*, 253 Ga. App. 723, 724 (3) (560 SE2d 303) (2002). He argues that no evidence was presented to show that there was anything of value in the gymnasium and the computers were located in a separate building. But intent may be inferred from other evidence as well. *Adams v. State*, 284 Ga. App. 534, 535 (1) (644 SE2d 426) (2007). Thus, in *Adams* we affirmed the defendant's conviction of burglary and held that sufficient evidence of intent to commit burglary was shown by evidence that Adams broke a window of a daycare center at night and left his own blood on the interior window ledge, even though there was no evidence that any items were taken or that valuable goods were stored on the premises. Id. "[T]he jury could infer an intent to steal based on the evidence of an unlawful entry into a building housing an operating business." (Footnote omitted.) Id. at 535-536 (1).

5

Here, with no other apparent motive, Harris broke into an operational school gymnasium that was part of a school that contained valuable resources in a nearby location. Moreover, it is well known that buildings contain valuable materials such as copper wire and pipes and that these materials are often stolen. See, e.g., *Floyd v. State*, 319 Ga. App. 564, 565 (737 SE2d 341) (2013) (copper wire and pipes); *Garrett v. State*, 317 Ga. App. 520, 523 (732 SE2d 93) (2012) (copper wire). We conclude that the evidence was sufficient to prove intent as well as burglary and therefore affirm the conviction. See *Tate*, supra; *Palmer*, supra (intent to commit theft found where defendant was seen leaning into broken car window without permission and defendant fled when confronted).

We conclude that any rational trier of fact could have found the essential elements of burglary beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. at 319 (III) (B).

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*

6